UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JULIE POWERS,                                    Case No. 16-13668

             Plaintiff,              Paul D. Borman
v.                                               United States District Judge

CHARLES RIVER LABORATORIES, INC.,                Stephanie Dawkins Davis
SUSAN JACKSON, and the UNITED STATES             United States Magistrate Judge
OF AMERICA,

             Defendants.
_____/

**REPORT AND RECOMMENDATION**
**MOTION TO DISMISS OR COMPEL ARBITRATION (Dkt. 6), MOTION**
**TO DISMISS (Dkt. 10), MOTION FOR LEAVE TO AMEND (Dkt. 24),**
**and MOTION TO DEFER RULING ON MOTION TO AMEND (Dkt. 30)**

## I.    PROCEDURAL HISTORY

Plaintiff, Julie Powers, filed a *pro se* complaint in state court on August 4,

2016, which was removed to federal court on October 14, 2016 pursuant to 28

U.S.C. § 1442(a)(1).  (Dkt. 1).  Plaintiff asserts claims under the Elliot-Larsen

Civil Rights Act of 1976 along with claims of negligence, breach of contract, and

intentional infliction of emotional distress.  (Dkt. 1).  On November 15, 2016,

District Judge Paul D. Borman referred all pretrial matters to the undersigned.

(Dkt. 14).  On October 6, 2016, the non-governmental defendants, Charles River

Laboratories (CRL) and Susan Jackson (collectively, defendants) filed a motion to

dismiss, or, in the alternative, to compel arbitration. (Dkt. 6). Plaintiff filed her response on November 14, 2016 and defendants filed their reply on November 23, 2016. (Dkt. 13, 15).

Plaintiff has moved to amend her complaint (Dkt. 24) and the United States does not object. (Dkt. 22, 23). Defendants CRL and Jackson maintain that nothing in the proposed amended complaint changes the conclusion that all claims asserted against them must be arbitrated. (Dkt. 29). Defendants CRL and Jackson have also filed a motion to defer ruling on the motion for leave to amend, to which plaintiff has responded and defendants have replied. (Dkt. 30, 32, 33). These matters are now ready for report and recommendation.

For the reasons set forth below, the undersigned **RECOMMENDS** that defendants' motion to compel arbitration be **GRANTED** and that the claims against defendants Charles River Laboratories and Susan Jackson be **DISMISSED** without prejudice. The undersigned also **RECOMMENDS** that defendant's motion to dismiss plaintiff's claims based on the contractual limitations period contained in the arbitration agreement be **DENIED**, without prejudice. Further, the undersigned **RECOMMENDS GRANTING** the motion for leave to amend the complaint, **TERMINATING** the United States' motion to dismiss as moot, and **DENYING** the motion to defer ruling on the motion for leave to amend as moot.

## II.    FACTUAL BACKGROUND

CRL is a premier global provider of products and related services designed to assist its clients to advance their drug discovery and development businesses. (Dkt. 6, Ex. B, Affidavit of Susan Jackson at ¶ 2).  Plaintiff was an employee of CRL's Insourcing Solutions (IS) business unit.  *Id*. at ¶ 4.  The IS business unit provides scientific, veterinary and animal husbandry professionals to its customers to assist with or to fully operate the customers' animal research programs.  *Id*. at ¶ 5.  CRL's customers include leading pharmaceutical and biotechnology companies, federal government agencies and academic institutions.  Wayne State University (WSU) has contracted with the National Institute of Health (NIH) to provide staff to assist WSU's principal investigators, who are running individual scientific research studies at the University.  *Id*. at ¶ 6.  As a client of the NIH, CRL provided employees (including plaintiff) to the NIH at WSU.  *Id*.

Plaintiff began working for Pathology Associates International (PAI), a subsidiary of Science Applications International Corporation (SAIC) on September 24, 1997, as an Administrative Assistant.  *Id.* at ¶ 7.  CRL acquired PAI on January 8, 2001, thereby becoming PAI's successor.  *Id*.  Plaintiff acknowledges in her complaint that "CRL has been consistently conducting business in Wayne County since 1997" and that she "was an employee of Defendant, CRL, from September 24, 1997 through February 9, 2015." (Dkt. 1,

¶¶ 7, 14).

On December 19, 2013, plaintiff began a medical leave for "mental health reasons." (Dkt. 1, ¶ 50; Dkt. 6, Ex. B, at ¶ 10). In November of 2014, almost one year after beginning her medical leave, plaintiff says that she informed CRL of the alleged "work-related harassment." (Dkt. 1, ¶¶ 56-57). Plaintiff specifies in her response to the motion to dismiss that she first notified Kim Ross in the human resources department at CRL of her stressful working conditions in September, 2014. (Dkt. 13-2, Pg ID 434-35). At no time after December 19, 2013 did plaintiff return to work or perform any work for CRL. (Dkt. 6, Ex. B, ¶ 10). Plaintiff's employment with CRL was terminated effective February 9, 2015. (Dkt. 6, Ex. B, at ¶ 11).

On July 21, 2015, plaintiff filed a charge of discrimination wherein she alleged that she believed her February 9, 2015 termination was "in retaliation for complaining of a protected activity in violation of the Age Discrimination in Employment Act." (Dkt. 6, Ex. C). Over one year later, and approximately 18 months after her employment was terminated, plaintiff filed the instant lawsuit.

On September 26, 1997, plaintiff executed a Mutual Agreement to Arbitrate Claims "in order to gain the benefits of a timely, impartial and cost-effective dispute resolution procedure." (Dkt. 6, Ex. C; Dkt. 6, Ex. B-2). The agreement provides in relevant part:

Science Applications International Corporation ("SAIC") and the undersigned ("Employee") have entered into this Mutual Agreement to Arbitrate Claims (the "Agreement") in order to establish and gain the benefits of a timely, impartial and cost-effective dispute resolution procedure. Any reference in the Agreement to SAIC will also be a reference to all subsidiaries and affiliated corporations, all benefit plans, the benefits plans' administrators, fiduciaries, affiliates, and the successors and assigns of any of them.

\* \* \*

1. **Claims Covered by the Agreement:** SAIC and Employee will settle by arbitration all statutory, contractual and/or common law claims or controversies ("claims") that SAIC may have against Employee, or that Employee may have against SAIC or any of its officers, directors, employees or agents in their capacity as such or otherwise. Claims subject to arbitration include (i) claims for discrimination (including, but not limited to, age, disability, marital status, medical condition, national origin, race, retaliation, sex, sexual harassment or sexual orientation); (ii) claims for breach of any contract or covenant (express or implied) (iii) claims for violation of any federal, state or other governmental law, statute, regulation or ordinance; and (iv) tort claims (including, but not limited to, negligent or intentional injury, defamation and termination of employment in violation of public policy).

\* \* \*

3. **Required Notice of Claims and Statute of Limitations:** Arbitration shall be initiated by serving or mailing a written notice to the other party within one year of the date the complaining

party first has knowledge of the event first giving rise to the claim. If the claim is not properly submitted in this time frame, all rights and claims that the complaining party has or may have had against the other party shall be waived and void, even if there is a federal or state statute of limitations which would have given the complaining party more time to pursue the claims…

\* \* \*

9. **Voluntary Execution:** EMPLOYEE ACKNOWLEDGES THAT EMPLOYEE HAS CAREFULLY READ THE AGREEMENT AND UNDERSTANDS ITS TERMS. EMPLOYEE AGREES THAT ALL UNDERSTANDINGS AND AGREEMENTS BETWEEN SAIC AND EMPLOYEE RELATING TO THE SUBJECTS COVERED IN THE AGREEMENT ARE CONTAINED IN IT. EMPLOYEE HAS VOLUNTARILY ENTERED INTO THE AGREEMENT WITHOUT RELIANCE ON ANY PROVISION OR REPRESENTATION BY SAIC OTHER THAN THOSE CONTAINED IN THE AGREEMENT AND HAS HAD AN OPPORTUNITY TO CONSULT WITH LEGAL COUNSEL, TO THE EXTENT DESIRED, BEFORE EXECUTING THE AGREEMENT.

\* \* \*

*Id*. The last page of the arbitration agreement required plaintiff to print and sign her name and date the agreement, which she did. (Dkt. 6, Pg ID 328).

Plaintiff says that the issue of the arbitration agreement was raised for the first time in defendant's motion to dismiss. After plaintiff's termination with CRL, plaintiff and her husband sent a letter to David Johst, Corporate Executive

6

Vice President, Human Resources, General Counsel and Chief Administrative Officer of CRL, reporting her claims. (Dkt. 1, ¶¶ 86, 87; Dkt. 13, Ex. 4) She was subsequently contacted by Mr. Scot Plotnick, an attorney at CRL about the matter. (Dkt. 1, ¶¶ 88, 89). During plaintiff's communications with Mr. Plotnick, the subject of the arbitration agreement was not raised. Plaintiff also says that, despite having received notice from the EEOC regarding the charge of Retaliation on July 21, 2015 (Dkt. 13, Ex. 5), at no time did Mr. Plotnick tell the EEOC about the existence the arbitration agreement. (Dkt. 13, Ex. 6). Plaintiff also says that, despite her requests for her personnel file and other documents from CRL representatives during her sick leave, and while reporting her claims of age discrimination, hostile work environment, etc., the existence of this "nearly 20 year old out-dated agreement" has only come to light in CRL's motion to dismiss.[1]

On August 5, 2016, plaintiff filed a five count complaint, which alleges the following causes of action: Count I: Elliott-Larsen Civil Rights Act (ELCRA) Age Harassment Discrimination as to all Defendants; Count II: Retaliation in Violation of the ELCRA as to all Defendants; Count III: Negligence as to CRL and Ms. Jackson; Count IV: Breach of Contract as to CRL and Ms. Jackson; and Count V:

---

[1] Plaintiff seems to suggest that defendants waived their right to assert the arbitration agreement because they did not raise the issue during the EEOC proceedings in this matter. However, neither party has provided legal support one way or another on this issue, nor have the parties addressed whether or to what extent the contractual limitations period might be tolled by the EEOC proceedings.

Intentional Infliction of Emotional Distress as to all Defendants. (Dkt. 1).

Defendants maintain that the events giving rise to plaintiff's claims all derive from

her employment or separation from employment with CRL. Plaintiff's individual

claims against Jackson are premised upon the allegations that Jackson was "an

agent of CRL" "providing Equal Employment Opportunity/Affirmative Action

Employer oversight to CRL." (Dkt. 1, ¶ 8). Thus, defendants maintain that all

claims against them are subject to the arbitration agreement. Plaintiff contends,

however, that she is not obligated to arbitrate her dispute because there was no

mutuality of agreement at the time the agreement was "ostensibly executed." (Dkt.

13, Pg ID 412).

## III. ANALYSIS AND CONCLUSIONS

### A. Standard of Review[2]

The Federal Arbitration Act provides that a written agreement to arbitrate

disputes arising out of a contract involving interstate commerce "shall be valid,

---

[2] Defendants bring this motion for "summary disposition" under the Michigan Court Rules, which are not applicable to a federal court action. Rather, the Court will apply the Federal Rules of Civil Procedure and accompanying federal case law to determine whether plaintiff's claims are subject to the arbitration agreement. *See e.g.*, *Schilling v. Swick*, 868 F.Supp. 904, 905 (W.D. Mich. 1994) (Where defendants filed a motion denominated as one for "summary disposition" pursuant to Fed.R.Civ. P.12(b)(6), the court observed that "[t]he Federal Rules of Civil Procedure do not recognize motions for 'summary disposition.' Motions to dismiss under Fed.R.Civ.P. 12(b)(6) are to be treated as motions for summary judgment under Fed.R.Civ.P. 56 if the Court considers matters outside of the pleadings. Fed.R.Civ.P. 12(b)."); *see also O'Hara v. Norfolk S. Ry. Co.*, 2006 WL 435723, at *1, n. 2 (E.D. Mich. Feb. 21, 2006) (Motion for "summary disposition" treated as motion to dismiss under Fed.R.Civ.P. 12(b)(6)); *Hodges v. Michigan*, 2013 WL 4675562, at *1 (E.D. Mich. Aug. 30, 2013) (Motion for "summary disposition" treated as motion for summary judgment under Fed.R.Civ.P. 56).

irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. A party seeking to enforce an arbitration agreement may request that litigation be stayed until the terms of the arbitration agreement have been fulfilled. *Id*. § 3. On such application, "[t]he court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." *Id*. § 4.

Before compelling arbitration, the Court "must engage in a limited review to determine whether the dispute is arbitrable." *Masco Corp. v. Zurich Am. Ins. Co.*, 382 F.3d 624, 627 (6th Cir. 2004) (quoting *Javitch v. First Union Sec., Inc.*, 315 F.3d 619, 624 (6th Cir. 2003)). Such review requires the Court to determine (1) whether "a valid agreement to arbitrate exists between the parties," and (2) whether "the specific dispute falls within the substantive scope of the agreement." *Id*. (quoting *Javitch*, 315 F.3d at 624). With respect to the arbitration agreement's validity, "the party opposing arbitration must show a genuine issue of material fact as to the validity of the agreement to arbitrate." *Great Earth Companies, Inc. v. Simons*, 288 F.3d 878, 889 (6th Cir. 2002) (internal quotation marks and citations omitted). With respect to the agreement's scope, "there is a presumption of arbitrability in the sense that an order to arbitrate the particular grievance should

not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT&T Techs., Inc. v. Communications Workers of Am.*, 475 U.S. 643, 650 (1986) (internal citations and quotation marks omitted). In other words, keeping in mind the "strong federal policy in favor of arbitration ... any ambiguities in the contract or doubts as to the parties' intentions should be resolved in favor of arbitration," *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000), especially when the arbitration clause is written broadly to encompass all claims arising under the contract, *AT&T Techs.*, 475 U.S. at 650.

B.     Legal Analysis of Motion to Compel Arbitration

The court must make "a number of threshold determinations before compelling arbitration." *Fazio v. Lehman Bros., Inc.*, 340 F.3d 386, 392 (6th Cir. 2003). Specifically, the court must determine: (1) whether the parties agreed to arbitration; (2) the scope of the agreement to arbitrate; (3) if federal statutory claims are asserted, whether Congress intended those claims to be nonarbitrable;[3] and (4) whether to stay the remainder of the proceedings pending arbitration if it concludes that some, but not all, of the claims in the action are subject to arbitration. *Id.*; *see also Glazer v. Lehman Bros.*, 394 F.3d 444, 451 (6th Cir.

---

[3] This factor is not applicable in this case because plaintiff does not assert any federal statutory claims against these defendants.

2005).

         1.      Whether the parties agreed to arbitration.

In the view of the undersigned, the parties plainly agreed to arbitrate their disputes.  Plaintiff and SAIC both signed the mutual agreement to arbitrate.  (Dkt. 6, Pg ID 328).  Plaintiff does not dispute that she began working for PAI, a subsidiary of SAIC on September 24, 1997, as an Administrative Assistant or that CRL acquired PAI on January 8, 2001, thereby becoming PAI's successor.  (Dkt. 6, Ex. B, ¶ 7).  Plaintiff's arguments that there was no meeting of the minds or that defendants have not established that both parties executed the agreement are without merit, as discussed in more detail below.

As a general rule, the enforceability of an arbitration clause depends on the validity of the contract in which it is contained.  *Oberhansly v. Ass'n of Better Living & Educ. Int'l*, 2017 WL 2115539, at *4 (W.D. Mich. May 16, 2017) (citing *High v. Capital Senior Living Properties 2-Heatherwood, Inc*., 594 F.Supp.2d 789, 797 (E.D. Mich. 2008)).  In Michigan, "the elements of a valid contract are (1) parties competent to enter into a contract; (2) a proper subject matter; (3) legal consideration; (4) mutuality of agreement; and (5) mutuality of obligation." *Id*. "'In order to form a valid contract, there must be a meeting of the minds on all the material facts.'" *Id*. (quoting *Kamalnath v. Mercy Memorial Hosp. Corp.*,194 Mich. App. 543, 548 (1992)).  In other words, there must be mutual assent to the

material facts. *Id.* (citing *Kamalnath*, at 548). The most common assent to a contract is well known: "[g]enerally 'one who signs a contract which she has had an opportunity to read and understand is bound by its provisions." *Oberhansly*, at *6 (quoting *Morris v. Homeowners Loan Corp.*, 2007 WL 674770, at *5 (E.D. Mich. Feb. 28, 2007). Thus, "'the failure to read or understand an agreement is not cause for avoiding same.'" *Morris*, at *5 (quoting *Carpenter v. Am. Excelsior Co.*, 650 F.Supp. 933, 937 (E.D. Mich. 1987)). Plaintiff signed the arbitration agreement. And, while plaintiff makes a number of factual assertions about the circumstances surrounding her signing of the Agreement -- presumably in an effort to challenge the validity of the Agreement -- she has not presented evidence by way of affidavit or otherwise to support such a challenge. Moreover, the circumstantial references that plaintiff provides in her brief do not appear to pertain to the arbitration agreement -- a stand-alone document, but rather principally to provisions concerning her pay contained in other documents in her employment packet. There is no evidence suggesting that she did not have an opportunity to read and understand the agreement, so she is bound by its provisions. *See Oberhansly*, at *6.[4]

---

[4] While plaintiff argues that the court should not grant defendants' motion for "summary disposition" without discovery, she has not explained what discovery she would need in order to rebut the presumption that the claims here are subject to the arbitration agreement that she admittedly signed.

Plaintiff also argues that the arbitration clause is unconscionable and unenforceable. (Dkt. 13, Pg ID 414-417). "Michigan law suggests that, in order for the contract to be considered unconscionable, both procedural and substantive unconscionability must be present." *Oberhansly*, at *7 (citing *High*, 594 F. Supp. 2d at 799). Procedural unconscionability exists where the weaker party has no realistic alternative to acceptance of the term. *Id*. (citations omitted). Procedural unconscionability is present where the challenged provision is buried in the text of a document, appears in small font, or is not otherwise conspicuous. *Id*. (citations omitted). Determining procedural unconscionability requires the Court to focus on the "real and voluntary meeting of the minds" of the parties at the time that the contract was executed and consider factors such as: "(1) relative bargaining power; (2) age; (3) education; (4) intelligence; (5) business savvy and experience; (6) drafter of the contract; and (7) whether the terms were explained to the 'weaker' party." *Id*. (quoting *Johnson v. Mobil Oil Corp*., 415 F. Supp. 264, 266 (E.D. Mich. 1976)). The factual support for plaintiff's procedural unconscionability claims is as follows:

> CRL Defendants motion is based on the existence of an allegedly perfected MAA signed by the Plaintiff on September 26, 1997. It is important to note that Judge Hathaway ordered CRL Defendants to provide the State Court the documents described in Paragraph 4 of the Mutual Agreement to Arbitrate, which refers to "Attachment C in the SAIC Employee Dispute

Resolution Guide (see CRL Defendants' Motion, Ex. 2
Id @ 1-2). It is clear that Judge Hathaway needed to
review these policies to determine whether the MAA was
fair. CRL Defendants have been unable to provide these
documents. Obviously these documents were not
contained in Plaintiff's personnel file (Exhibit 10, Id at
2).

In Plaintiff's Statement of Facts, it is obvious that
a clear procedural issue of unconscionability exists:
Plaintiff began working for Defendant, Romero, in June
of 1992, and had multiple employers until her
employment with PAI; The paperwork provided by PAI
generalized as a formality to employee Plaintiff in the
same position she held since 1992; PAI issued faulty
documentation and never recalls receiving the SAIC
Employee Dispute Resolution Guide. Based on
Defendant Jackson's Affidavit which stated she has been
employed by CRL since 2001 (no date specified) (see
Exhibit B of CRL Defendants Motion at 1) that CRL
Defendants cannot dispute these facts, as Defendant
Jackson was not present [sic] they occurred.

(Dkt. 13, Pg ID 415-416). In response, defendants argue that plaintiff has failed to

allege and prove procedural *and* substantive unconsionability, which are both

required under Michigan law. *See Clark v. DaimlerChrysler Corp*., 268

Mich. App. 138, 143 (2005). As to procedural unconscionability, plaintiff

suggests that she subjectively perceived the agreement as a "formality" and did not

meaningfully review it. According to defendants, that plaintiff may have hurriedly

and inattentively signed the Agreement because it was a prerequisite to her

continuing work with PAI actually defeats any claim of procedural

unconscionability. *See Dreher v. ESKCO, Inc.*, 2009 U.S. Dist. LEXIS 129290, at *10 (S.D. Ohio May 27, 2009) ("[T]he fatal weakness in Plaintiff's assertion of procedural unconscionability is the fact that she did not read the whole Employment Agreement before signing it.").  Defendants also argue that the mere fact that CRL does not possess a copy of the rules referenced in the arbitration agreement does establish substantive unconscionability, because the procedures are easily severed and replaced with the American Arbitration Association Employment Arbitration Rules and Mediation Procedures, under the agreement's severability clause. *See Hulett v. Capitol Auto Grp., Inc.*, 2007 U.S. Dist. LEXIS 81380, at *16 (D. Or. Oct. 29, 2007) (holding that substantively unfair discovery provision of agreement was "easily severed" and replaced with AAA rules).

In the view of the undersigned, plaintiff's unconscionability claim fails. Plaintiff has neither alleged nor proven that substantive unconscionability is present, as is required by Michigan law.  While plaintiff argues that procedural unconscionability is present, she merely mentions substantive unconscionability without otherwise expounding in her response brief.  (Dkt. 13, Pg ID 414-417). Substantive unconscionability refers to contractual terms that are unreasonably or grossly favorable to one side and to which the disfavored party does not assent. *Pembroke Health Facilities, L.P. v. Ford*, 2017 WL 2486354, at *5 (W.D. Ky. June 8, 2017) (citations and quotation marks omitted); *Clark v. DaimlerChrysler*

*Corp.*, 268 Mich. App. 138, 143-44 (2005) ("Substantive unconscionability exists where the challenged term is not substantively reasonable. However, a contract or contract provision is not invariably substantively unconscionable simply because it is foolish for one party and very advantageous to the other. Instead, a term is substantively unreasonable where the inequity of the term is so extreme as to shock the conscience."). In the event of a failure to establish substantive unconscionability, the court need not even address procedural unconscionability. *Flint v. Bank of Am., N.A.*, 2016 WL 1444505, at *7 n. 3 (E.D. Mich. Apr. 13, 2016) ("Because Plaintiff has not shown substantive unconscionability, the Court need not address the arguments advanced in support of procedural unconscionability."). Here, plaintiff simply makes no claim that any aspect of the arbitration agreement is substantively unconscionable. Therefore, her claim of unconscionability fails.

2.     The scope of the arbitration agreement.

The scope of the arbitration agreement is quite broad:

> **1.     Claims Covered by the Agreement:** SAIC and Employee will settle by arbitration all statutory, contractual and/or common law claims or controversies ("claims") that SAIC may have against Employee, or that Employee may have against SAIC or any of its officers, directors, employees or agents in their capacity as such or otherwise. Claims subject to arbitration include (i) claims for discrimination (including, but not

16

> limited to, age, disability, marital status, medical
> condition, national origin, race, retaliation, sex,
> sexual harassment or sexual orientation); (ii)
> claims for breach of any contract or covenant
> (express or implied) (iii) claims for violation of
> any federal, state or other governmental law,
> statute, regulation or ordinance; and (iv) tort
> claims (including, but not limited to, negligent or
> intentional injury, defamation and termination of
> employment in violation of public policy).

(Dkt. 6, Pg ID 327). The language of the arbitration agreement plainly

encompasses a broad swathe of potential claims in its scope, including all of

plaintiff's claims under Michigan common law and the ELCRA.

> 3. Whether to stay the remainder of the proceedings pending
> arbitration if it concludes that some, but not all, of the claims in
> the action are subject to arbitration.

The undersigned further concludes that defendants are entitled to dismissal

rather than merely a stay of this litigation. It is true that where claims are referred

to arbitration, the FAA provides for a stay of the court proceedings "until such

arbitration has been had in accordance with the terms of the agreement." 9 U.S.C.

§ 3. However, in cases, such as the present one, where all of a party's claims

against these defendants are subject to arbitration, courts may properly dismiss the

complaint. *See Arnold v. Arnold Corp.–Printed Commc'ns for Bus.*, 920 F.2d

1269, 1275 (6th Cir. 1990) (holding that it was not "error for the district court to

dismiss the complaint" after ordering arbitration); *see also Ozormoor v. T-Mobile*

*USA, Inc.*, 354 Fed. Appx. 972, 975 (6th Cir. 2009) (rejecting the argument that the FAA requires district courts to stay suits pending arbitration rather than dismiss them). Indeed, "[t]he weight of authority clearly supports the dismissal of the case when all of the issues raised in the district court must be submitted to arbitration." *Green v. Ameritech Corp.*, 200 F.3d 967, 973 (6th Cir. 2000) (quoting *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992)). "Most district courts in this circuit agree that the best procedure for enforcing arbitration agreements is to dismiss the court action without prejudice." *Gilchrist v. Inpatient Med. Servs., Inc.*, 2010 WL 3326742, at *5 (N.D. Ohio Aug. 23, 2010) (quoting *Nestle Waters N. Am., Inc. v. Bollman*, 2006 WL 3690804, at *6 (W.D. Mich. Dec. 12, 2006), *aff'd*, 505 F.3d 498 (6th Cir. 2007)); *see also McGill v. Meijer, Inc.*, 2011 WL 1166895, at *4 (W.D. Mich. Mar. 28, 2011) (where arbitration is compelled as to all claims, dismissal for lack of jurisdiction is appropriate, and because this dismissal is not on the merits, it will be without prejudice) (citing *Kruse v. AFLAC Int'l, Inc.*, 458 F. Supp.2d 375, 388 (E.D. Ky. 2006)). Given that all of plaintiff's claims against these defendants are subject to final and binding arbitration, the undersigned recommends that the claims against defendants CRL and Jackson should be dismissed without prejudice.[5]

---

[5] Given that the United States will not be involved in the arbitration process, the litigation against it would unnecessarily be prolonged by staying these proceedings pending the results of any arbitration between plaintiff and defendants CRL and Jackson. Thus, there is no reason to

C.    Legal Analysis of Motion to Dismiss Based on Contractual
      Limitations Period

Defendants also ask this Court to determine that plaintiff's claims are barred

by the contractual limitation period set forth in the arbitration agreement, which

requires that notice of the claims be provided within one year of the events giving

rise to the claim.  As the Sixth Circuit explained in *United SteelWorkers of Am.,*

*AFL-CIO-CLC v. Saint Gobain Ceramics & Plastics, Inc.*, 505 F.3d 417, 418-19

(6th Cir. 2007), questions of timeliness are for the arbitrator to decide.  *Id*. (citing

*Under John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543 (1964)); *Howsam v.*

*Dean Witter Reynolds, Inc.*, 537 U.S. 79 (2002) ("a time limit rule is a matter

presumptively for the arbitrator, not for the judge").  The Sixth Circuit further

concluded that where the terms of this time-limitation provision or the parties'

agreement rebut that presumption, any dispute over the meaning of the provision

should be resolved by an arbitrator.  *Id*.  Notably, the Supreme Court in *Howsam*,

537 U.S. at  84-85, relied on the comments contained in the Revised Uniform

Arbitration Act of 2000 (RUAA), which provide that "in the absence of an

agreement to the contrary, issues of substantive arbitrability ... are for a court to

decide and issues of procedural arbitrability, i.e., whether prerequisites such as

---

stay the non-arbitrable claims asserted against the government.  *See e.g.*, *Orcutt v. Kettering Radiologists, Inc*., 199 F.Supp.2d 746, 758 (S.D. Ohio 2002) ("Because KMC will not be involved in the arbitration process, the litigation against it would be needlessly protracted by staying the proceedings against it pending arbitration between Plaintiff and KRI and KRIC. Accordingly, the Court sees no reason to stay the litigation of these nonarbitrable claims.").

time limits, notice, laches, estoppel, and other conditions precedent to an obligation to arbitrate have been met, are for the arbitrators to decide." RUAA § 6, comment 2.

In reviewing the arbitration agreement in this case, the undersigned finds nothing in it, and defendants point to nothing in that agreement, to rebut the presumption that the arbitrator should resolve whether and to what extent plaintiff's claims are barred by the contractual limitations provision. *See also*, *Chambers v. Sun West Mortgage Co. Inc.*, 2014 WL 2211015 (S.D. Ohio 2014) ("[T]he statute of limitations is a defense to arbitrability, which is a matter that presumptively should be decided by the arbitrator."). Thus, the question of whether plaintiff's claims are so barred is a matter for the arbitrator to decide, not the Court, and plaintiff's claims against defendants CRL and Jackson should not be dismissed on this basis.

D.   Other Pending Motions

Plaintiff has moved to amend her complaint (Dkt. 24) and the United States does not object. (Dkt. 22, 23). Defendants CRL and Jackson maintain that nothing in the proposed amended complaint changes the conclusion that all claims asserted against them must be arbitrated. (Dkt. 29). The undersigned agrees. Plaintiff may amend the complaint, but may only bring claims against the United States. Should this report and recommendation be adopted, plaintiff must file the

amended complaint fourteen days thereafter.  Because the amended complaint will govern the case, the United States' motion to dismiss (Dkt. 10) should be **TERMINATED** as moot, without prejudice to refile a motion to dismiss as to the amended complaint (Dkt. 34).  *See e.g.*, *Williams v. Kelly*, 2007 WL 2951303, *1 (E.D. Mich. 2007) (Defendants' motion to dismiss denied as moot where the complaint to which it was directed had been superseded by an amended complaint.).  Finally, the motion to defer ruling on the motion for leave to amend should be **DENIED** as moot.  (Dkt. 30).

## IV. RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that defendants' motion to compel arbitration be **GRANTED** and that the claims against defendants CRL and Jackson be **DISMISSED WITHOUT PREJUDICE**. The undersigned also **RECOMMENDS** that defendant's motion to dismiss plaintiff's claims based on the contractual limitations period contained in the arbitration agreement should be **DENIED**, without prejudice.  Further, the undersigned **RECOMMENDS GRANTING** the motion for leave to amend the complaint, **TERMINATING** the United States' motion to dismiss as moot, and **DENYING** the motion to defer ruling on the motion for leave to amend as moot.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service,

as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: August 8, 2017                    s/Stephanie Dawkins Davis
                                        Stephanie Dawkins Davis
                                        United States Magistrate Judge

## CERTIFICATE OF SERVICE

I certify that on August 8, 2017, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to all counsel and parties of record.

s/Tammy Hallwood
Case Manager
(810) 341-7887
tammy_hallwood@mied.uscourts.gov