UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JULIE POWERS,

        Plaintiff,

v.

CHARLES RIVER LABORATORIES,
INC., SUSAN JACKSON, and the
UNITED STATES OF AMERICA,

        Defendants.
_____/

Case No. 16-cv-13668

Paul D. Borman
United States District Judge

Stephanie Davis Dawkins
United States Magistrate Judge

OPINION AND ORDER (1) OVERRULING DEFENDANTS' AND
PLAINTIFF'S OBJECTIONS TO MAGISTRATE JUDGE DAVIS'S
AUGUST 8, 2017 REPORT AND RECOMMENDATION (ECF NOS. 35, 36),
(2) ADOPTING THE REPORT AND RECOMMENDATION (ECF NO. 34),
(3) GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION
TO DISMISS OR COMPEL ARBITRATION (ECF NO. 6),
(4) DISMISSING DEFENDANTS CHARLES RIVER LABORATORIES AND
SUSAN JACKSON WITHOUT PREJUDICE,
(5) GRANTING IN PART PLAINTIFF'S MOTION FOR LEAVE TO AMEND
THE COMPLAINT ONLY AS TO THE UNITED STATES (ECF NO. 24),
(6) DENYING AS MOOT THE UNITED STATES' MOTION TO DISMISS
COUNT V OF THE COMPLAINT (ECF NO. 10), AND
(7) DENYING AS MOOT DEFENDANTS' MOTION TO DEFER RULING ON
MOTION FOR LEAVE TO AMEND (ECF NO. 30)

Plaintiff filed her *pro se* Complaint, alleging age discrimination and hostile

work environment, in Wayne County Circuit Court on or about August 4, 2016, and

the case was removed to this Court on October 14, 2016, pursuant to 28 U.S.C. §

1

1442(a)(1).[1]   (ECF No. 1, Notice of Removal.)   Immediately after removal, on

October 24, 2016, Defendants CRL and Jackson moved to dismiss the Complaint or,

in the alternative, to compel arbitration. (ECF No. 6.)  On January 3, 2017, this Court

referred all pretrial proceedings in this *pro se* matter to Magistrate Judge Stephanie

Dawkins Davis.  (ECF No. 20.)

On August 8, 2017, Magistrate Judge Stephanie Dawkins Davis issued a Report

and Recommendation to (1) deny Defendants' Charles River Laboratories ("CRL")

and Susan Jackson's motion to dismiss Plaintiff's claims with prejudice based on a

contractual limitations period but to grant these Defendants' motion to compel

arbitration and dismiss Plaintiff's claims against them without prejudice (ECF No. 6),

(2) grant Plaintiff's motion for leave to amend her Complaint against the United States

only (ECF No. 24) and deny the United States' motion to dismiss the claims against

it in the original Complaint as moot (ECF No. 10), and (3) to deny as moot

Defendants' motion to defer ruling on the motion for leave to amend pending the

resolution of Defendants' motion to dismiss or to compel arbitration (ECF No. 30).


Both Plaintiff and Defendants have filed Objections to the Report and

---

[1]  This case was originally presided over by the Honorable Gerald E. Rosen and was
reassigned to this Court on December 27, 2016 upon Judge Rosen's retirement from
the federal bench.

Recommendation. (ECF Nos. 35, 36.) Defendants filed a Response to Plaintiff's Objections. (ECF No. 37.) For the reasons that follow, the Court OVERRULES both Objections and ADOPTS the Report and Recommendation in full.

## I.     BACKGROUND

The Magistrate Judge thoroughly recited the facts pertinent to resolution of these motions in her Report and Recommendation, and the Court adopts that recitation here:

> CRL is a premier global provider of products and related services designed to assist its clients to advance their drug discovery and development businesses. (Dkt. 6, Ex. B, Affidavit of Susan Jackson at ¶ 2). Plaintiff was an employee of CRL's Insourcing Solutions (IS) business unit. *Id*. at ¶ 4. The IS business unit provides scientific, veterinary and animal husbandry professionals to its customers to assist with or to fully operate the customers' animal research programs. *Id*. at ¶ 5. CRL's customers include leading pharmaceutical and biotechnology companies, federal government agencies and academic institutions. Wayne State University (WSU) has contracted with the National Institute of Health (NIH) to provide staff to assist WSU's principal investigators, who are running individual scientific research studies at the University. *Id*. at ¶ 6. As a client of the NIH, CRL provided employees (including plaintiff) to the NIH at WSU. *Id*. Plaintiff began working for Pathology Associates International (PAI), a subsidiary of Science Applications International Corporation (SAIC) on September 24, 1997, as an Administrative Assistant. *Id*. at ¶ 7. CRL acquired PAI on January 8, 2001, thereby becoming PAI's successor. *Id*. Plaintiff acknowledges in her complaint that "CRL has been consistently conducting business in Wayne County since 1997" and that she "was an employee of Defendant, CRL, from September 24, 1997 through February 9, 2015." (Dkt. 1, 3 ¶¶ 7, 14).

On December 19, 2013, plaintiff began a medical leave for "mental health reasons." (Dkt. 1, ¶ 50; Dkt. 6, Ex. B, at ¶ 10). In November of 2014, almost one year after beginning her medical leave, plaintiff says that she informed CRL of the alleged "work-related harassment." (Dkt. 1, ¶¶ 56-57). Plaintiff specifies in her response to the motion to dismiss that she first notified Kim Ross in the human resources department at CRL of her stressful working conditions in September, 2014. (Dkt. 13-2, Pg ID 434-35). At no time after December 19, 2013 did plaintiff return to work or perform any work for CRL. (Dkt. 6, Ex. B, ¶ 10). Plaintiff's employment with CRL was terminated effective February 9, 2015. (Dkt. 6, Ex. B, at ¶ 11).

On July 21, 2015, plaintiff filed a charge of discrimination wherein she alleged that she believed her February 9, 2015 termination was "in retaliation for complaining of a protected activity in violation of the Age Discrimination in Employment Act." (Dkt. 6, Ex. C). Over one year later, and approximately 18 months after her employment was terminated, plaintiff filed the instant lawsuit.

On September 26, 1997, plaintiff executed a Mutual Agreement to Arbitrate Claims "in order to gain the benefits of a timely, impartial and cost-effective dispute resolution procedure." (Dkt. 6, Ex. C; Dkt. 6, Ex. B-2). The agreement provides in relevant part:

> Science Applications International Corporation ("SAIC") and the undersigned ("Employee") have entered into this Mutual Agreement to Arbitrate Claims (the "Agreement") in order to establish and gain the benefits of a timely, impartial and cost-effective dispute resolution procedure. Any reference in the Agreement to SAIC will also be a reference to all subsidiaries and affiliated corporations, all benefit plans, the benefits plans' administrators, fiduciaries, affiliates, and the successors and assigns of any of them.

> * * *

> 1. Claims Covered by the Agreement: SAIC

and Employee will settle by arbitration all statutory, contractual and/or common law claims or controversies ("claims") that SAIC may have against Employee, or that Employee may have against SAIC or any of its officers, directors, employees or agents in their capacity as such or otherwise. Claims subject to arbitration include (i) claims for discrimination (including, but not limited to, age, disability, marital status, medical condition, national origin, race, retaliation, sex, sexual harassment or sexual orientation); (ii) claims for breach of any contract or covenant (express or implied) (iii) claims for violation of any federal, state or other governmental law, statute, regulation or ordinance; and (iv) tort claims (including, but not limited to, negligent or intentional injury, defamation and termination of employment in violation of public policy).

\* \* \*

3. Required Notice of Claims and Statute of Limitations: Arbitration shall be initiated by serving or mailing a written notice to the other party within one year of the date the complaining party first has knowledge of the event first giving rise to the claim. If the claim is not properly submitted in this time frame, all rights and claims that the complaining party has or may have had against the other party shall be waived and void, even if there is a federal or state statute of limitations which would have given the complaining party more time to pursue the claims…

* * *

> 9. Voluntary Execution: EMPLOYEE ACKNOWLEDGES THAT EMPLOYEE HAS CAREFULLY READ THE AGREEMENT AND UNDERSTANDS ITS TERMS. EMPLOYEE AGREES THAT ALL UNDERSTANDINGS AND AGREEMENTS BETWEEN SAIC AND EMPLOYEE RELATING TO THE SUBJECTS COVERED IN THE AGREEMENT ARE CONTAINED IN IT. EMPLOYEE HAS VOLUNTARILY ENTERED INTO THE AGREEMENT WITHOUT RELIANCE ON ANY PROVISION OR REPRESENTATION BY SAIC OTHER THAN THOSE CONTAINED IN THE AGREEMENT AND HAS HAD AN OPPORTUNITY TO CONSULT WITH LEGAL COUNSEL, TO THE EXTENT DESIRED, BEFORE EXECUTING THE AGREEMENT.

* * *

*Id.* The last page of the arbitration agreement required plaintiff to print and sign her name and date the agreement, which she did. (Dkt. 6, Pg ID 328).

Plaintiff says that the issue of the arbitration agreement was raised for the first time in defendant's motion to dismiss. After plaintiff's termination with CRL, plaintiff and her husband sent a letter to David Johst, Corporate Executive Vice President, Human Resources, General Counsel and Chief Administrative Officer of CRL, reporting her claims. (Dkt. 1, ¶¶ 86, 87; Dkt. 13, Ex. 4.) She was subsequently contacted by Mr. Scot Plotnick, an attorney at CRL about the matter. (Dkt. 1, ¶¶ 88, 89). During plaintiff's communications with Mr. Plotnick, the subject of the arbitration agreement was not raised. Plaintiff also says that, despite

having received notice from the EEOC regarding the charge of Retaliation on July 21, 2015 (Dkt. 13, Ex. 5), at no time did Mr. Plotnick tell the EEOC about the existence the arbitration agreement. (Dkt. 13, Ex. 6). Plaintiff also says that, despite her requests for her personnel file and other documents from CRL representatives during her sick leave, and while reporting her claims of age discrimination, hostile work environment, etc., the existence of this "nearly 20 year old out-dated agreement" has only come to light in CRL's motion to dismiss.

(Report and Recommendation 3-7) (footnote omitted).

## II. STANDARD OF REVIEW

This Court reviews *de novo* the portions of the report and recommendation to which objections have been filed. 28 U .S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). A district "court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." *Id.* Objections must be timely to be considered. A party who receives notice of the need to timely object yet fails to do so is deemed to waive review of the district court's order adopting the magistrate judge's recommendations. *Mattox v. City of Forest Park,* 183 F.3d 515, 519-20 (6th Cir. 1999). Magistrate Judge Davis specifically informed the parties of the need to timely object to her recommendations or waive their right to appeal further. (ECF No. 34, 21-22, PgID 959-60.) "[A] party *must* file timely objections with the district court to avoid waiving appellate review." *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987) (emphasis in original).

Only those objections that are specific are entitled to a *de novo* review under the statute. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). "The parties have the duty to pinpoint those portions of the magistrate's report that the district court must specially consider." *Id.* (internal quotation marks and citation omitted). A general objection, or one that merely restates the arguments previously presented, does not sufficiently identify alleged errors on the part of the magistrate judge. An "objection" that does nothing more than disagree with a magistrate judge's determination, "without explaining the source of the error," is not considered a valid objection. *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505, 509 (6th Cir. 1991). Specific objections enable the Court to focus on the particular issues in contention. *Howard*, 932 F.2d at 509. Without specific objections, "[t]he functions of the district court are effectively duplicated as both the magistrate and the district court perform identical tasks. This duplication of time and effort wastes judicial resources rather than saving them, and runs contrary to the purposes of the Magistrate's Act." *Id.* "[O]bjections disput[ing] the correctness of the magistrate's recommendation but fail[ing] to specify the findings [the objector] believed were in error" are too summary in nature. *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995) (alterations added). "A general objection to the entirety of the magistrate's report has the same effects as would a failure to object." *Howard*, 932 F.2d at 509.

## III. ANALYSIS

### A. Plaintiff's Objections

Plaintiff submits two numbered objections, both of which object generally to the entirety of Magistrate Judge Davis's resolution of both the motion to compel and the motion to amend her complaint. Such "general objections . . . have the same effect[] as would a failure to object." *Howard*, 932 F.3d at 509. Notwithstanding this failure to properly object, the Court will address what appears to be the essence of Plaintiff's Objections.

**1.** "**Plaintiff objects to the Magistrate Judge's Report and Recommendation granting Defendants' motion to compel arbitration and the claims against defendants Charles River Laboratories and Susan Jackson be DISMISSED without prejudice.**"

"It is well settled in both commercial and labor cases that whether parties have agreed to 'submi[t] a particular dispute to arbitration' is typically an 'issue for judicial determination.'" *Sheet Metal Employers Indus. v. Absolut Balancing Co., Inc.*, 830 F.3d 358, 361 (6th Cir. 2016) (quoting *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 296 (2010)). The court must determine whether a valid agreement exists, bearing in mind the "strong federal policy" that favors the arbitration of disputes:

When asked by a party to compel arbitration under a contract, a federal

court must determine whether the parties agreed to arbitrate the dispute at issue. Claims relating to fraud in the making of the arbitration agreement are determined by the court. Courts are to examine the language of the contract in light of the strong federal policy in favor of arbitration. Likewise, any ambiguities in the contract or doubts as to the parties' intentions should be resolved in favor of arbitration.

*Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000) (citations omitted).

As an important threshold issue, Plaintiff is simply wrong in her understanding of the appropriate standard of review applicable to a motion to compel arbitration – the Court is not constrained in its review to the four corners of Plaintiff's Complaint, as Plaintiff submits. First of all, Plaintiff and Defendants continue to cite to the Michigan Court Rules, which are completely inapplicable to procedural matters in this Court, as the Magistrate Judge noted in her Report and Recommendation. (Report at 8 n. 2.) In fact Federal courts analyze motions to compel arbitration under different federal procedural standards, including Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction, Fed. R. Civ. P. 12(b)(6) for failure to state a claim, and Fed. R. Civ. P. 56 for summary judgment, depending upon the facts and posture of the case. Regardless of which procedural rule is invoked, it is beyond question that a court resolving a motion to compel arbitration is not constrained to consider only the allegations of plaintiff's complaint. Indeed, the court is obligated, assuming the issue cannot be determined from the face of plaintiff's complaint, to consider affidavits and

other evidence of a type that would be submissible at the summary judgment stage. *See, e.g., Andrews v. TD Ameritrade, Inc.*, 596 F. App'x 366, 371 (6th Cir. 2014) (affirming district court's resolution of defendant's motion to compel arbitration, which was filed pursuant to Fed. R. Civ. P. 12(b)(1), noting that "[t]he district court must undertake a limited review of evidence to determine whether it has the authority to hear a case or compel arbitration," and explicitly rejecting plaintiff's argument that the district court erred in relying on affidavits and agreements that were outside the pleadings); *Great Earth Companies, Inc. v. Simons*, 288 F.3d 878, 889 (6th Cir. 2002) ("In order to show that the validity of the agreement to arbitrate is 'in issue,' the party opposing arbitration must show a genuine issue of material fact as to the validity of the agreement to arbitrate," and the court must determine "whether the evidence presented is such that a reasonable finder of fact could conclude that no valid agreement to arbitrate exists.").

Here, Magistrate Judge Davis appropriately considered: (1) the Jackson Affidavit (ECF No. 6, Ex. B); (2) the Plaintiff's 9/21/97 offer of employment letter, which was signed and "accepted" by Plaintiff on 9/26/97 (Jackson Aff. Ex. 1); (3) the Mutual Agreement to Arbitrate Claims, also signed by Plaintiff on 9/26/97 (Jackson Aff. Ex. 2); (4) a June 3, 2015 letter to CRL submitted by Plaintiff as an attachment to her Response, signed by both Plaintiff and her husband (ECF No. 13, Ex. 4); (5)

Plaintiff's Charge of Discrimination, submitted by Plaintiff in her Response, and also bearing Plaintiff's signature (ECF No. 13, Ex. 5); and (6) CRL's Response to Plaintiff's Charge of Discrimination, also submitted by Plaintiff (ECF No. 13, Ex. 6). Thus, both parties submitted evidence in support of their positions on the contested issue of the arbitrability of Plaintiff's claims and Plaintiff did not identify, through an appropriate affidavit or otherwise, what facts she was unable to present that would have created a genuine issue of material fact regarding the validity and scope of the MAA. The Magistrate Judge appropriately relied on this evidence in resolving the Defendants' motion. "[T]he party opposing arbitration must show a genuine issue of material fact as to the validity of the agreement to arbitrate." *Great Earth*, 288 F.3d at 889. As discussed below, Plaintiff has failed to point to any error in the Magistrate Judge's conclusion that Plaintiff has failed to present such evidence here.

The Magistrate Judge correctly identified the three inquiries relevant to determining the issue of arbitrability here: (1) whether the parties agreed to arbitration; (2) the scope of the agreement to arbitrate; and (3) whether to stay or dismiss remaining proceedings if an agreement to arbitrate is found.

The Magistrate Judge correctly concluded that the parties did agree to arbitration. First, Plaintiff has failed to create a genuine issue of material fact regarding the fact that she signed the MAA in September, 1997. In fact, in a filing in

state court, Plaintiff referred to the MAA as "the time-barred Arbitration Agreement signed by Plaintiff in 1997." (ECF No. 37, Defs.' Resp. to Pl.'s Objs. Ex. 1, Emergency Motion for Continuance, ¶ 8, PgID 1028.) Plaintiff has not denied, by way of affidavit or otherwise, that her signature appears on the MAA, nor has she denied that she signed and accepted the Offer of Employment, which plainly stated that it was contingent on Plaintiff signing the MAA. (Jackson Aff. Exs. 1, 2, PgID 324-25, 327-28.) Indeed, the Court can conclude, comparing the signatures appearing on these two documents with the signatures appearing on documents that Plaintiff herself has submitted to the Court, i.e. the June 5, 2015 Letter to CRL and her Charge of Discrimination, *see* Pl.'s Resp. PgID, 461, 465, that the signature on the MAA is that of the Plaintiff. *See* Fed. R. Evid. 910(b)(3) (stating that a "comparison with an authenticated specimen by . . . the trier of fact" can be sufficient to satisfy the requirement of authentication); *Erman v. Adams*, No. 11-13499, 2011 WL 5553809, at *9 (E.D. Mich. Nov. 15, 2011) ("[C]omparing the signatures on the Assignment and Amendment with Adams's signature on the Quitclaim Deed yields the unmistakable conclusion that the signatures on the former belong to Adams, establishing that the documents are authentic.") (Citing Fed.R.Evid. 901(b)(3)). Plaintiff's suggestion that she does not remember signing this document, or her unsubstantiated denial (in the face of the undisputed documentary evidence) that "there was never a contract to

arbitrate," do not suffice to create a genuine issue of material fact as to the validity of the MAA. *See Stout*, 228 F.3d at 715 ("One who signs a contract is presumed to know its contents, and . . . if he has had an opportunity to read the contract which he signs he is bound by its provisions.") (citation omitted); *DeOrnellas v. Aspen Square Mgt., Inc.*, 295 F. Supp. 2d 753, 764 (E.D. Mich. 2003) (finding plaintiffs were bound by an agreement to arbitrate that bore their signatures, although they claimed not to have remembered signing such an agreement, in the absence of allegations of fraud, mistake, or duress in execution of the agreement to arbitrate); *Morris v. Homeowners Loan Corp.*, No. 06-13484, 2007 WL 674770, at *5 (E.D. Mich. Feb. 28, 2007) ("Generally one who signs a contract which he has had an opportunity to read and understand, is bound by its provisions. Furthermore, the failure to read or understand an agreement is not cause for avoiding same.") (internal citations and quotation marks omitted). No genuine issues of material fact have been raised here regarding alleged fraud or duress at the time that Plaintiff signed the MAA in 1997 and the law is clear that Plaintiff cannot now avoid the terms of an agreement that she signed simply by asserting she cannot remember that she signed it.

Nor do Plaintiff's vague references to the "prevailing conditions" under which the MAA and her acceptance of employment were "perfected" raise genuine issues of material fact relevant to the validity of the MAA. Plaintiff provides no specific

examples of these "prevailing conditions," either in her brief or, more importantly, by way of an affidavit or a declaration submitted under oath. And her references to claims that she was required at some time after signing the MAA to "pad her hours" has no relevance to the validity of the MAA, a stand alone agreement which Plaintiff executed at the commencement of her employment. "The Supreme Court has explained that in deciding whether a valid agreement to arbitrate exists, district courts may consider only claims concerning the validity of the arbitration clause itself, as opposed to challenges to the validity of the contract as a whole." *Great Earth*, 288 F.3d at 889 (citation omitted). Plaintiff provides no legal or factual support for her suggestion that subsequent employee handbooks somehow may have altered the parties' obligations under the MAA, a separate stand-alone agreement that was not part of an employee handbook or any other legal document.

Nor has Plaintiff created a genuine issue of material fact regarding the issue of successorship. Plaintiff does not dispute that the MAA binds all subsidiaries and successor corporations to SAIC, nor does she dispute that she began working for PAI, a subsidiary of SAIC, on or about September 24, 1997, or that CRL acquired PAI on or about January 8, 2001. In her Objections, ECF No. 36 at 8, PgID 996, Plaintiff sets forth her interpretation of the legal test for determining successor liability, i.e. continuity of both business purpose and work force, but fails to cite to any evidence

that would tend to establish that the acquisition of PAI by CRL somehow failed to meet these legal criteria. Plaintiff states in her Complaint that she was employed with CRL from September 24, 1997, through her termination on February 9, 2015. (Compl. ¶¶ 7, 14.) Plaintiff suggests no significant change in the nature of the work performed by CRL throughout her tenure, nor does she suggest a wholesale change in personnel. Plaintiff has failed to raise a genuine issue of material fact regarding whether CRL was a successor to PAI.

Accordingly, Plaintiff's Objections regarding the Magistrate Judge's conclusion that Plaintiff's claims against Jackson and CRL are subject to arbitration are OVERRULED. The Plaintiff's claims against Jackson and CRL will be dismissed without prejudice and these parties will proceed to arbitration under the terms of the MAA.[2]

_____

[2] The Magistrate Judge noted in her Report and Recommendation that Plaintiff "seems to suggest that defendants waived their right to assert the arbitration agreement because they did not raise the issue during the EEOC proceedings in this matter." (ECF No. 34, Report at 7 n. 1.) Because neither party provided legal support one way or the other on the issue of waiver, the Magistrate Judge did not address it in her Report. Plaintiff does not mention the waiver issue in her Objections and has therefore waived any right to appeal the issue further. In any event, Plaintiff's assertions in her briefs regarding Defendants' pre-litigation conduct do not suggest a valid claim of waiver. "[A] party may waive the right to arbitration by engaging in a course of conduct completely inconsistent with reliance on an arbitration agreement or delaying assertion of the right to such an extent that the opposing party incurred actual prejudice." *Hall v. Ikea Property Inc.*, No. 14-cv-12706, 2016 WL 1072091, at *4 (E.D. Mich. March 17, 2016) (citing *Shy v. Navistar Int'l Corp.*, 781 F.3d 820,

2. **"Plaintiff objects, in part, to the Magistrate Judge's Report and Recommendation granting the motion for leave to amend the complaint only as to United States' defendant, and not CRL and Jackson."**

Plaintiff challenges the Magistrate Judge's decision to grant leave to amend only as to the United States, while admitting that the new allegations of the proposed amended complaint "largely apply" to her claims against the United States. (Pl.'s Objs. 12.) As the Magistrate Judge correctly concluded, the MAA was extremely broad in scope, covering:

> (i) claims for discrimination (including, but not limited to, age, disability, marital status, medical condition, national origin, race, retaliation, sex, sexual harassment or sexual orientation); (ii) claims for breach of any contract or covenant (express or implied) (iii) claims for violation of any federal, state or other governmental law, statute, regulation or ordinance; and (iv) tort claims (including, but not limited to, negligent or intentional injury, defamation and termination of employment in violation of public policy).

(MAA ¶ 1.)

---

827-28 (6th Cir. 2015); *Johnson Assoc. Corp. v. HL Operating Corp.*, 680 F.3d 713, 717 (6th Cir. 2012); and *Hurley v. Deutsche Bank Trust Co. Americas*, 610 F.3d 334, 338 (6th Cir. 2010)). "'Both inconsistency and actual prejudice are required.'" *Id.* (quoting *Shy*, 781 F.3d at 828). "A defendant does not have 'an affirmative obligation to invoke its contractual right to arbitration before a claim was filed against it,' however." *Elzemeyer v. MJM Co.*, No. 12-10718, 2012 WL 1715245, at *2 (E.D. Mich. May 15, 2012) (quoting *Gordon v. Dadante*, 294 Fed. Appx. 235, *4 (6th Cir. 2008)). "The strong presumption in favor of arbitration works against finding waiver in cases other than those with the most compelling fact patterns." *Id.* at *1 (quoting *JDP, Inc. v. Dicello*, 539 F.3d 388, 393 (6th Cir. 2008)).

Plaintiff cites no aspect of her proposed amended complaint that would fall outside the scope of the MAA. Plaintiff states that the proposed amended complaint "clarifies facts regarding [Plaintiff's] employment history," and pleads that she has "no actual knowledge or details of CRL's acquisition" of PAI. (Pl.'s Objs. 13, PgID 1001.) Plaintiff again refers to an October 2007 Employee Handbook, but provides no legal or factual basis that would permit a trier of fact to conclude that this 2007 Employee Handbook in any manner affected the validity of the MAA. *See Huffman v. Hilltop Cos.*, 747 F.3d 391, 394-95 (6th Cir. 2014) (party asserting the expiration of a broadly-worded arbitration agreement must present "forceful evidence of purpose" to exclude a claim from arbitration, even when a subsequent agreement may have been silent as to arbitration); *Voto v. Lowry Computer Pdcts., Inc.*, No. 09-cv-10469, 2009 WL 10680228, at *7 (E.D. Mich. June 2, 2009) (noting that an agreement to arbitrate can only be "negated expressly or by clear implication"). Plaintiff was required to come forward with something more than innuendo regarding the possible impact of a subsequently issued "handbook," the particulars of which Plaintiff could not remember, to create a genuine issue of fact regarding the continued validity of her unequivocal agreement to arbitrate a broad swath of claims that might arise out of her relationship with her employer. She has not done so and her proposed amended complaint does not allege facts that plausibly suggest such a claim.

The Magistrate Judge correctly concluded that nothing in Plaintiff's proposed amended complaint changes the conclusion that all claims asserted against CRL and Jackson are subject to arbitration under the broadly-worded MAA. The Magistrate Judge appropriately denied Plaintiff's motion to amend the complaint as to these Defendants and Plaintiff's Objection is OVERRULED.

### B. Defendants' Objection

Defendants object to the Magistrate Judge's denial of their motion to dismiss Plaintiff's claims against them with prejudice based upon a contractual limitation clause in the MAA. The Sixth Circuit has clearly expressed the view that disputes over time limitation bars contained in arbitration agreements should be decided by arbitrators, not courts. *United Steel Workers of Am., AFL-CIO-CLC v. Saint Gobain Ceramics & Plastics, Inc.*, 505 F.3d 417, 418-19 (6th Cir. 2007) (citing *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 85 (2002) ("the applicability of the [] time limit rule is a matter presumptively for the arbitrator, not for the judge").

The Court finds that the Magistrate Judge correctly concluded that the applicability of the contractual time bar contained in the MAA is an issue for the arbitrator to decide, and not this Court. Accordingly, Defendants' Objection is OVERRULED.

## IV. CONCLUSION

For the foregoing reasons, it is ORDERED that:

1) Defendants' and Plaintiff's Objections to the Report and Recommendation (ECF Nos. 35, 36) are OVERRULED;

2) The Magistrate Judge's August 8, 2017 Report and Recommendation (ECF No. 34) is ADOPTED;

3) The Defendants' Motion to Dismiss or Compel Arbitration (ECF No. 6) is GRANTED IN PART AND DENIED IN PART;

4) Defendants' Jackson and CRL are DISMISSED WITHOUT PREJUDICE and Plaintiff's claims against these Defendants shall proceed to arbitration under the terms of the MAA;

5) Plaintiff's Motion for Leave to Amend (ECF No. 24) is GRANTED IN PART only as to the United States, and her amended complaint shall be filed **within fourteen (14) days** of the date of this Order;

6) The United States' Motion to Dismiss Count V of the original Complaint (ECF No. 10) is DISMISSED AS MOOT; and

7) The Defendants' Motion to Defer Ruling (ECF No. 30) is DISMISSED AS MOOT.

IT IS SO ORDERED.

s/Paul D. Borman
Paul D. Borman
United States District Judge

Dated:  September 29, 2017

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on September 29, 2017.

s/Deborah Tofil
Case Manager