UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JULIE POWERS,

      Plaintiff

v.

UNITED STATES, SECRETARY OF
THE DEPARTMENT OF HEALTH
AND HUMAN SERVICES,

      Defendants.

_____/

Case No. 16-13668

Paul D. Borman
United States District Judge

Stephanie Dawkins Davis
United State Magistrate Judge

**REPORT AND RECOMMENDATION**
**MOTION TO DISMISS AMENDED COMPLAINT (Dkt. 44)**

## I.    PROCEDURAL HISTORY

Plaintiff, Julie Powers, filed a *pro se* complaint in state court on August 4, 2016, which was removed to federal court on October 14, 2016 pursuant to 28 U.S.C. § 1442(a)(1). (Dkt. 1). On November 15, 2016, District Judge Paul D. Borman referred all pretrial matters to the undersigned. (Dkt. 14). On October 6, 2016, the non-governmental defendants, Charles River Laboratories (CRL) and Susan Jackson (collectively, defendants) filed a motion to dismiss, or, in the alternative, to compel arbitration. (Dkt. 6). Plaintiff also moved to amend her complaint (Dkt. 24) and the United States did not object. (Dkt. 22, 23). On August 8, 2017, the undersigned recommended that the non-governmental defendants' motion to compel arbitration be granted, that the claims against them

1

be dismissed, and that plaintiff's motion for leave to amend the complaint be granted. (Dkt. 34). These recommendations were adopted by the District Court. (Dkt. 38). Plaintiff filed her amended complaint, containing only claims against the United States, on October 13, 2017. (Dkt. 39). In Count I, she alleges age discrimination in violation of the Age Discrimination in Employment Act of 1967 (ADEA) against the Secretary of DHHS. (Dkt. 39 at Pg ID 1106-1111). In Count II (incorrectly labeled as Count IV), she alleges retaliation in violation of the ADEA against the Secretary of DHHS. (Dkt. 39, Pg ID 1111-1114). In Count III, she alleges intentional infliction of emotional distress against the United States under the Federal Tort Claims Act, 28 U.S.C. § 1346(b). (Dkt. 39 at Pg ID 1115-1117). The government moves to dismiss plaintiff's ADEA claims (Counts I and II) under Federal Rule of Civil Procedure 12(b)(6) and appears to moves to dismiss Count III pursuant to Rule 12(b)(1), on the issue of exhaustion, and Rule 12(b)(6) on the issue of preemption. On November 27, 2017, the United States filed its motion to dismiss the amended complaint. (Dkt. 44). This matter is fully briefed. (Dkts. 53, 55).

For the reasons set forth below, the undersigned **RECOMMENDS** that the United States' motion to dismiss be **GRANTED** in part and **DENIED** in part.

## II.    FACTUAL BACKGROUND

From 1992 to 2015, plaintiff Julie Powers worked in Detroit, Michigan, as an executive assistant in the Perinatology Research Branch (PRB) of the National Institute of Child Health and Human Development (NICHHD), within the National Institutes of Health (NIH).  (Dkt. 39, Pg ID 1063-1064, ¶¶ 9, 10; Pg ID 1066, ¶ 20).  NIH is an agency within the United States Department of Health and Human Services (DHHS).[1]  Throughout her time at PRB, plaintiff was employed by a series of private companies that contracted with NIH to provide administrative services. (Dkt. 39, Pg ID 1064, ¶ 15).  According to the government, at all relevant times, Charles River Laboratories, Inc. (CRL) was the government contractor that employed plaintiff.  (Dkt. 39, Pg ID 1066, ¶ 21).  Plaintiff provided services to the Chief of PRB, Roberto Romero, M.D., an employee of DHHS.  (Dkt. 39, ¶¶ 12-14).

In December 2006, Romero allegedly gave plaintiff the title "PRB Chief of Staff" and plaintiff began to manage and supervise two other administrative personnel.  (Dkt. 39, Pg ID 1067, ¶ 28; Pg ID 1068, ¶ 31).  Plaintiff alleges that she put in overtime and sacrificed vacation time "to meet Dr. Romero's increasingly unreasonable demands."  (Dkt. 39, Pg ID 1068, ¶¶ 32-33).  Plaintiff claims that particularly after 2009, Dr. Romero "initiated an increasingly hostile work

---

[1] https://www.nih.gov/about-nih/who-we-are.

environment" of "bullying, intimidation, ridicule, mockery, threats, public

humiliation, gas-lighting and other forms of abusive behavior." (Dkt. 39, Pg ID

1069, ¶ 35). Plaintiff claims that many of Dr. Romero's remarks were related to

her age. (Dkt. 39, Pg ID 1069-1070, ¶ 38).

In 2012, plaintiff began psychiatric treatment, to cope with the work

environment. (Dkt. 39, Pg ID 1071, ¶ 44). Plaintiff alleges that in April 2013, Dr.

Romero demoted her and replaced her with another CRL employee who was

younger and whom plaintiff had previously supervised. (Dkt. 39, Pg ID 1071, ¶

46). Dr. Romero allegedly demoted plaintiff a second time in August 2013, and she

was moved to an office down the hall from her former office, removed from the

daily workings of the administrative staff. (Dkt. 39, Pg ID 1072-1073, ¶ 52).

In December 2013, plaintiff's level of anxiety and depression rendered her

unable to perform her job, and she went on medical leave. (Dkt. 39, Pg ID 1074,

¶¶ 60-61). On December 20, 2013, she was contacted by CRL's Human Resources

Representative and Benefits Specialist, Kim Ross, who notified plaintiff that she

would forward paperwork for FMLA and short term disability. (Dkt. 39, Pg ID

1075, ¶ 62). CRL first put plaintiff on short-term disability for six months, then

extended her medical leave periodically based on questionnaires submitted by

plaintiff's therapist and on periodic discussions between plaintiff and Ross. (Dkt.

39, Pg ID 1075, ¶ 65).  Plaintiff continued mental health treatment.  (Dkt. 39, Pg ID 1075-1076, ¶¶ 65, 67).

In September 2014, plaintiff informed Ross that her therapist had determined that her stressful working conditions, and specifically working for Dr. Romero, had caused her medical condition.  (Id. at Pg ID 1076, ¶ 71).  In November 2014, plaintiff says she informed Ross of "the exact nature of her work-related harassment" and then, a few days later, informed Susan Jackson, CRL Division Director of Human Resources, of the same.  (Dkt. 39, Pg ID 1076-1077, ¶¶ 72, 75).  Jackson offered a standard severance package, but plaintiff declined and requested a higher amount based on what she considered her difficult experience at PRB.  (Dkt. 39, Pg ID 1078, ¶¶ 77-78).  Plaintiff claims that Jackson promised that CRL would conduct an immediate investigation and report the results to NIH.  (Dkt. 39, Pg ID 1079, ¶ 79).  Between November 2014 and March 2015, plaintiff communicated with Jackson a number of times regarding her complaints about PRB, allegedly providing Jackson examples of a hostile and abusive environment and names of witnesses who could support her claims.  (Dkt. 39, Pg ID 1080, ¶ 85). On February 9, 2015, plaintiff's clinical therapist indicated that plaintiff was permanently disabled and could not return to work.  (Dkt. 39, Pg ID 1083, ¶¶ 94-95).

At the end of February or beginning of March 2015, plaintiff contacted the EEOC office in Detroit by telephone to obtain information regarding reporting her claim of harassment.  (Dkt. 39, Pg ID 1084, ¶¶ 99-101).  Someone named Dawn informed her that she had 300 days to file a claim from when she first reported harassment to CRL (which plaintiff believes was November 2014).  Id.  The EEOC also informed plaintiff that CRL was her official employer.  (Dkt. 39, Pg ID 1084, ¶¶ 99-101).  Based on this information, plaintiff continued to pursue a resolution with CRL.  (Dkt. 39, Pg ID 1085, ¶ 102).

On March 9, 2015, plaintiff emailed Susan Jackson at CRL citing its responsibilities as a government contractor, EEOC laws, and the numerous "red flags" over a period of years indicating a hostile environment at PRB.  (Dkt. 39, Pg ID 1085, ¶ 103).  Plaintiff alleges that on March 10, 2015, Susan Jackson at CRL informed her that she had spoken to the witnesses at PRB that plaintiff had suggested, and that plaintiff's claims could not be substantiated.  (Dkt. 39, Pg ID 1085-1086, ¶¶ 104-111).  According to plaintiff, Jackson mischaracterized PRB colleague Keltia Franke's testimony regarding Dr. Romero.  (Dkt. 39, Pg ID 1085-1086, ¶¶ 107, 113-114).  Jackson ended the conversation by informing plaintiff of the termination of her employment with CRL and asking plaintiff to let her know if she was still interested in the 13-week severance package.  (Dkt. 39, Pg ID 1086, ¶ 112).

Plaintiff emailed Jackson on March 11, 2015, and requested a copy of CRL's contract with the NIH, CRL's policy for conducting investigations of complaints, CRL's report to the NIH of plaintiff's claims, and the CRL report of investigation and basis of final determination.  (Dkt. 39, Pg ID 1087, ¶ 117). Plaintiff claims that Jackson responded with an email that mischaracterized their chain of communications.  (Dkt. 39, Pg ID 1087-1088, ¶ 118).  Plaintiff believes that Jackson did not conduct a thorough investigation, address the matter with CRL supervisors, or report plaintiff's claims to the NIH.  (Dkt. 39, Pg ID 1089, ¶ 125). Plaintiff and her husband sought help from the executive vice president of human resources David Johst and CRL counsel Scott Plotnick, but had no success.  (Dkt. 39, Pg ID 1089-1091, ¶¶ 127-130).

On July 21, 2015, plaintiff filed a claim against CRL with Detroit's EEOC office.  (Dkt. 39, Pg ID 1091, ¶ 132).  She alleges that she was very clear in her interview that CRL was technically her employer but that Dr. Romero, an employee of NIH, was her supervisor.  (Dkt. 39, Pg ID 1091, ¶ 137).  EEOC determined that plaintiff's claims of age discrimination were untimely, but accepted plaintiff's claim that Jackson at CRL had retaliated against her for EEOC activity.  (Dkt. 39, Pg ID 1092, ¶ 140).

On October 19, 2015, plaintiff sent correspondence to Dr. Catherine Spong, Acting Director of NICHD and Deputy Ethics Counselor of NICHD, reporting

complaints involving Dr. Romero and CRL.  (Dkt. 39, Pg ID 1093, ¶¶ 144-145).

In November 2015, plaintiff received a letter from Maritza Zeiberg, Director of the

Division of Program Integrity (DPI), the division responsible for conducting

reviews of allegations involving misuse of NIH resources.  (Dkt. 39, Pg ID 1094,

¶ 147 and n. 1).  Zeiberg confirmed receipt of the correspondence to Dr. Spong and

stated that DPI was reviewing the material.  (Dkt. 39, Pg ID 1094, ¶ 147).  On

December 4, 2015, a conference call was held between Zeiberg, DPI Senior

Program Analyst Kristin Ta, Executive Officer of NICHD John Jarman, plaintiff,

and her husband.  (Dkt. 39, Pg ID 1093, ¶ 146; Pg ID 1094, ¶¶ 150, 152).  Plaintiff

asserts that during the call, Jarman stated that NICHD had no knowledge of

plaintiff's prior claims reported to CRL regarding Dr. Romero.  (Dkt. 39, Pg ID

1095, ¶ 153).  Plaintiff claims that Zeiberg and Jarman informed plaintiff that her

allegations would be investigated within NIH, including allegations regarding age

discrimination, hostile work environment, harassment and retaliation, CRL's

noncompliance with their federal contract, and various scientific and ethical

violations of Dr. Romero.  (Dkt. 39, Pg ID 1095, ¶ 154).  Zeiberg also allegedly

informed plaintiff that for claims related to employment discrimination the agency

contracts independent investigators to investigate EEO violations and an

investigator would come to Detroit to look into her claims.  (Dkt. 39, Pg ID 1095,

¶ 155).

On February 22, 2016, Latif Doman emailed plaintiff informing her that NIH had retained him to investigate allegations against NIH and CRL. (Dkt. 39, Pg ID 1095, ¶ 156). Plaintiff sent Doman documents, including her EEOC complaint, personnel reviews, and names of witnesses who could support her claims. (Dkt. 39, Pg ID 1097, ¶ 162). Plaintiff alleges that Doman explained that he would be preparing a report of investigation (ROI), that NIH was required to provide her a copy, and that after a final agency decision plaintiff would have the option to file a lawsuit within a certain period of time. (Dkt. 39, Pg ID 1097-1098, ¶¶ 164-165). Plaintiff asked Doman who had hired him to do the investigation and he allegedly responded that it was the Office of Equity, Diversity, and Inclusion (EDI) at NIH. (Dkt. 39, Pg ID 1098, ¶ 168).

In March, Doman came to Detroit for three days and interviewed Dr. Romero and other PRB staff members. (Dkt. 39, Pg ID 1098, ¶ 170). On May 24, 2016, Doman informed plaintiff that he had submitted his ROI to the NIH and that she should be receiving a copy of the ROI shortly. (Dkt. 39, Pg ID 1101, ¶ 179). On June 6, 2016, plaintiff emailed Zeiberg and Ta at DPI to inquire about the report, mentioning that it was time-sensitive to her filing her claims in federal court. (Dkt. 39, Pg ID 1101, ¶ 181). On June 7, 2016, plaintiff submitted a FOIA request for the ROI. (Dkt. 39, Pg ID 1101, ¶ 182). DPI directed her to follow up with Beth Chandler in the NIH Office of Human Resources. (Dkt. 39, Pg ID 1101-

1102, ¶ 183). Chandler replied that she could not release the ROI to plaintiff and that plaintiff should file a FOIA request. (Dkt. 39, Pg ID 1102, ¶ 184). Plaintiff followed up with the NIH FOIA office multiple times between July 5 and July 29, 2016, and on July 18, 2016, was told by Roger Bordine, Program Assistant at the FOIA office, that the report was being reviewed by EDI, the Office of Equity, Diversity and Inclusion. (Dkt. 39, Pg ID 1102, ¶ 186). The same day, plaintiff emailed the EDI office to inquire about the ROI and was informed on July 21, 2016, that EDI was not the office that processed her allegations. (Dkt. 39, Pg ID 1102, ¶ 188). EDI emailed plaintiff a pre-complaint form and plaintiff learned of a 45-day EEO deadline for federal discrimination complaints. (Dkt. 39, Pg ID 1102-1103, ¶ 188). On July 29, 2016, plaintiff received a letter from the FOIA office stating that it had located 94 responsive pages within the Office of Human Resources, but determined that they would be withheld due to ongoing investigations within NIH. (Dkt. 39, Pg ID 1103, ¶ 189).

On August 4, 2016, plaintiff filed a five-count complaint in Wayne County Circuit Court against CRL, Susan Jackson, and Roberto Romero. (Dkt. 1 at Pg ID 9). She sued Jackson and Romero in their individual and official capacities. (Id.). On October 14, 2016, defendant Roberto Romero removed the suit to federal court. (Dkt. 1 at Pg ID 2). The United States was substituted for defendant Romero in Count V under the Federal Employees Liability Reform and Tort Compensation

Act of 1988.  (Dkts. 8-9).

## III.   ANALYSIS AND CONCLUSION

### A.   <u>Standards of Review</u>

#### 1.   Rule 12(b)(6)

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must first

comply with Rule 8(a)(2), which requires "'a short and plain statement of the claim

showing that the pleader is entitled to relief,' in order to 'give the defendant fair

notice of what the . . . claim is and the grounds upon which it rests.'"  *Bell Atlantic*

*Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (quoting *Conley v. Gibson*, 355 U.S.

41, 47 (1957)).  A plaintiff is also obliged "to provide the grounds of his

entitlement to relief," which "requires more than labels and conclusions, and a

formulaic recitation of the elements of a cause of action will not do."  *Association*

*of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 548 (6th Cir. 2007)

(quoting *Twombly*, 550 U.S. at 555 (citations and internal quotation marks

omitted)).  And, while a complaint need not contain "detailed" factual allegations,

its "[f]actual allegations must be enough to raise a right to relief above the

speculative level on the assumption that all the allegations in the complaint are

true."  *Id.* (quoting *Twombly*, 550 U.S. at 555 (citation and internal quotation

marks omitted)); *see also League of United Latin Am. Citizens v. Bredesen*, 500

F.3d 523, 527 (6th Cir. 2007) (emphasis in original) (the factual allegations in a

complaint need not be detailed but they "must do more than create speculation or suspicion of a legally cognizable cause of action; they must show *entitlement* to relief.").

A complaint filed by a *pro se* plaintiff must be "liberally construed" and "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citation omitted). Thus, when applying *Twombly*, except as to a claim of fraud, the Court must still read plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519 (1972), and accept plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992); *Erickson*, 551 U.S. at 93-94 (The Court of Appeals improperly departed "from the liberal pleading standards set forth by Rule 8(a)(2)" and failed to liberally construe" the *pro se* complaint at issue.).

In ruling on defendant's motion under Rule 12(b)(6), the Court may consider the pleadings of the parties, including copies of any written instrument(s) attached to a pleading as their attachment thereto renders them a part of the pleading under Fed.R.Civ. P. 10(c). *See also Commercial Money Center, Inc. v. Illinois Union Ins. Co*., 508 F.3d 326, 335-336 (6th Cir. 2007) (Motion for judgment on the pleadings was not converted to motion for summary judgment by court's consideration of documents that were not attached to counterclaim, but were

attached to the complaint and the answer to counterclaim).  The undersigned also recognizes that generally if a court considers matters outside of the pleadings, the court must convert the motion into one for summary judgment under Rule 56. However, "[w]hen a court is presented with a 12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein."  *Bassett v. Nat'l Coll. Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008); *see also Weiner v. Klais & Co*., 108 F.3d 86, 89 (6th Cir. 1997) (noting that the Sixth Circuit has "held that 'documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to h[is] claim'") (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)).  "[I]n general, a court may only take judicial notice of a public record whose existence or contents prove facts whose accuracy cannot reasonably be questioned."  *Passa v. City of Columbus*, 123 Fed. Appx. 694, 697 (6th Cir. 2005).

        2.      Rule 12(b)(1)

As mentioned earlier, the government brings its motion to dismiss Count III

for violation of the FTCA under Rule 12(b)(6) as to its preemption argument[2] and under Rule 12(b)(1) as to its failure to exhaust/subject matter jurisdiction argument.  As explained in *McQueary v. Colvin*, 2017 WL 63034, at *3 (W.D. Ky. Jan. 5, 2017), a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction "can challenge the sufficiency of the pleading itself (facial attack) or the factual existence of subject matter jurisdiction (factual attack)" *Cartwright v. Garner*, 751 F.3d 752, 759 (6th Cir. 2014) (citing *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994)).  "A facial attack is a challenge to the sufficiency of the pleading itself.  On such a motion, the court must take the material allegations of the petition as true and construed in the light most favorable to the nonmoving party."  *McQueary*, at *3 (quoting *Ritchie*, 15 F.3d at 598); *see also Cartwright*, 751 F.3d at 759 ("A facial attack goes to the question of whether the plaintiff has alleged a basis for subject matter jurisdiction, and the Court takes the allegations of the complaint as true for purposes of the Rule 12(b)(1) analysis").  "A factual attack, on the other hand, is not a challenge to the sufficiency of the pleading's allegations, but a challenge to the factual existence of subject matter jurisdiction."  *McQueary*, at *3 (quoting *Ritchie*, 15 F.3d at 598).  The government argues that

---

[2] A motion to dismiss based on preemption is decided under Rule 12(b)(6).  *See e.g.*, *Re-Borne, Inc. v. Panther II Transportation, Inc.*, 2018 WL 1526075, at *2 (E.D. Ky. Mar. 28, 2018) ("As Plaintiff's state law claims are preempted, no relief can be granted and those motions are dismissed pursuant to Rule 12(b)(6)."); *Boler v. Earley*, 865 F.3d 391, 400 (6th Cir. 2017) ("[C]ases examining like questions of preemption have arisen as motions to dismiss under Rule 12(b)(6) or for summary judgment.").

the failure to exhaust administrative remedies under the FTCA presents a

jurisdictional bar and thus, has moved to dismiss under Rule 12(b)(1).

Notwithstanding this argument, as explained in more detail below, more recent

Sixth Circuit jurisprudence suggests that the government's motion to dismiss

plaintiff's IIED claim based on failure to exhaust administrative remedies under

the FTCA should be decided under Rule 12(b)(6), rather than Rule 12(b)(1).

### B.   Counts I and II - ADEA Claims

The Sixth Circuit has stated, in addressing an ADEA claim, that "a failure to

exhaust administrative remedies ... is not a jurisdictional bar, but rather a condition

precedent to an action in federal court."  *McKnight v. Gates*, 282 Fed. Appx. 394,

397 n. 2 (6th Cir. 2008) (citing *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385,

393-98 (1982); *Mitchell v. Chapman*, 343 F.3d 811, 819-20 (6th Cir. 2003)).  As a

result, the proper analysis for a motion to dismiss an ADEA claim for failure to

exhaust administrative remedies is under Rule 12(b)(6).

As also explained in *McKnight*, the ADEA does not explicitly require

federal government employees to exhaust administrative remedies before bringing

suit for age discrimination.  *McKnight*, 282 Fed. Appx. at 397.  Rather, under 29

U.S.C. § 633a, a federal-employee claimant may either "invoke the EEOC's

administrative process and then file a civil action in federal district court if he is

not satisfied with his administrative remedies" or, "[a]lternatively, the employee

has the option...to bypass the administrative process either in part or in its

entirety." *Langford v. U.S. Army Corps of Eng'rs*, 839 F.2d 1192, 1194 (6th Cir.

1988) (citation omitted).

Under the first alternative, the administrative remedy applicable to plaintiff

is set forth in 29 C.F .R. § 1614.105(1)(1), which requires an employee to contact

an EEO counselor within 45 days of the effective date of a personnel action in

order to file a discrimination claim. *See e.g.*, *Baldwin v. Napolitano*, 2010 WL

2730769, *2 (E.D. Mich. July 9, 2010); *see also Burzynski v. Cohen*, 264 F.3d 611,

617 (6th Cir. 2001) (citing 29 C.F.R. § 1614.105(a)(1)) (A federal employee may

invoke the EEOC's administrative process set forth in 29 C.F.R. § 1614 by seeking

EEO counseling within 45 days, filing an EEO administrative complaint with the

employing agency, and complying with the remaining steps of the administrative

process.).

Under the latter alternative, the employee "can decide to present the merits

of his claim to a federal court in the first instance." *Stevens v. Dep't of Treasury*,

500 U.S. 1, 5 (1991) (citing 29 U.S.C. § 633a(b) and (c)).  If the plaintiff takes the

latter route, however, the ADEA still requires formal notice to the EEOC before

filing suit:

> When the individual has not filed a complaint concerning
> age discrimination with the Commission, no civil action
> may be commenced by any individual under this section
> until the individual has given the Commission not less

> than thirty days' notice of an intent to file such action.
> Such notice shall be filed within one hundred and eighty
> days after the alleged unlawful practice occurred.

29 U.S.C. § 633a(d); *see also Ivey v. Rice*, 759 F.Supp. 394, 402 (S.D. Ohio 1991)[3]

("Where a plaintiff elects to bypass the administrative process in whole or in part,

he must comply with the notice requirement of § 633a(d) or face dismissal."),

approved in *Anderson v. Tennessee Valley Authority*, 991 F.2d (6th Cir. 1993)

(table); *Hunter v. Sec'y of the Army*, 565 F.3d 986 (6th Cir. 2009) ("[A] federal

employee may directly sue in federal district court [under the ADEA] so long as

the employee gives the EEOC notice of an intent to sue within 180 days of the

allegedly discriminatory act and then waits 30 days before filing the action.").

Failure to comply with either of the above-described procedures constitutes a

failure to exhaust administrative remedies and bars an employee from bringing suit

in federal court.  *See McKnight*, 282 Fed. Appx. at 398-99 (affirming dismissal of

ADEA class claim for failure to exhaust or comply with notice requirement);

*Anderson v. TVA*, 1993 WL 113730, at *6-8 (6th Cir. Apr. 13, 1993) (affirming

dismissal of ADEA claim where the plaintiff failed either to fully exhaust

administrative remedies or provide notice of intent to file suit).

The government argues that plaintiff never contacted its Office of Equity,

Diversity, and Inclusion (EDI) to initiate a discrimination complaint.  (Dkt. 44-2,

---

[3] Affirmed 961 F.2d 1577 (6th Cir. 1992).

Ex. A, affidavit of Kenrick A. Small). Given that the government brought the motion to dismiss plaintiff's ADEA claims under Rule 12(b)(6), the undersigned will not consider materials outside the four corners of the complaint. *Koshani v. Barton*, 2018 WL 3150345, at *3 (E.D. Tenn. June 27, 2018) ("On a Rule 12(b)(6) motion to dismiss, the Court normally has to confine its analysis to the allegations within the four corners of the complaint.); *see also Trustees of Detroit Carpenters Fringe Benefit Funds v. Patrie Const. Co.*, 618 Fed. Appx. 246, 255 (6th Cir. 2015) (Typically, with respect to Rule 12(b)(6) motions, the Court is limited to the four corners of the complaint.). The government also argues that plaintiff's correspondence to Dr. Spong on October 19, 2015 does not satisfy exhaustion. According to defendant, this was plaintiff's first direct communication to the agency concerning Dr. Romero, given that she blames CRL for not informing NIH before that. (Dkt. 39, Pg ID 1093, ¶¶ 144-145). The government points out that plaintiff's last contact with Dr. Romero and thus with the alleged hostile environment was shortly after she left the agency on medical leave in December 2013 when, according to plaintiff, Dr. Romero called and harassed her at home. (Dkt. 39, Pg ID 1074-1075, ¶¶ 61-64). This was nearly two years before her correspondence to Dr. Spong. The government further argues that even if plaintiff's termination by CRL is considered the last actionable adverse action for purposes of starting the 45-day clock—and it is unclear why a termination by CRL

should count as an adverse action by DHHS—that termination was March 9, 2015, seven months before plaintiff's contact with Dr. Spong.  Thus, the government maintains that the correspondence with Dr. Spong does not constitute timely exhaustion.

The government also argues that plaintiff's contact with the EEOC office in Detroit does not satisfy exhaustion because her EEOC complaint, attached to her Amended Complaint in this case, shows that her claim was against CRL, not DHHS.  (Dkt. 39-1, Pg ID 1121).  The government points out that, if such a claim were permitted to go forward based on this contact with EEOC, DHHS would have had no notice of allegations of discrimination by its own employees.  Moreover, even if this contact mattered for purposes of exhaustion with DHHS, it happened on July 21, 2015, a year and half after plaintiff had contact with Dr. Romero, and more than four months after her termination by CRL.  (Dkt. 39, Pg ID 1091).  Thus, because plaintiff did not file an EEO claim within 45 days of any of these "complaints," the government maintains that she did not exhaust under her first option for ADEA exhaustion.

In response, plaintiff contends that she exhausted her administrative remedies with NIH by filing an administrative complaint with her employer, which is a federal contractor with NIH.  She asserts that CRL and NIH are joint employers and thus, her notice satisfied her reporting obligations.  She also points

to her reporting of the matter to Dr. Spong at NIH. NIH then conducted an investigation which waives the exhaustion defense, according to plaintiff. Plaintiff does not appear to argue that she complied with the alternative to exhaustion, providing 30 days' notice to the EEOC within 180 days of the alleged discriminatory actions.

The government makes several persuasive points in reply. For purposes of its motion, the government assumes that NIH is a joint employer with CRL. (Dkt. 55, p. 1, n. 1). However, even assuming NIH and CRL were "joint employers," defendant points out that plaintiff cites no cases supporting the proposition that reporting discrimination to a private contractor or to the EEOC constitutes exhaustion of a discrimination claim against a federal agency. In contrast, the government argues that in the "joint employer" context, the processes for exhaustion for a federal agency and a private employer are independent and "suing a private entity and a federal agency as 'joint employers' does not exempt a complainant from complying with the express prerequisites to suit applicable to federal employees." *Watson v. Tenn. Valley Authority*, 867 F.Supp.2d 1215, 1225 (N.D. Ala. 2012); *see also Chandra v. Bowhead Science & Technology, LLC*, 2017 WL 2729967, *8 (N.D. Tex. June 26, 2017) (granting Army's motion to dismiss for failure to exhaust where plaintiff had filed EEOC claim against federal contractor but failed to file EEO claim within Army); *Scott v. Moniz*, 2014 WL

12539672, *4 (W.D. Wash. Nov. 17, 2014) ("An individual who is employed by both a private staffing firm and a federal agency, who intends to hold both employers liable for [discrimination], must follow separate sets of pre-suit administrative procedures. . ."); *Frank v. England*, 313 F.Supp.2d 532, 537 (D. Md. 2004) ("[I]t would be unreasonable to consider the Navy a second employer under Title II, but exempt Plaintiff from exhausting his administrative remedies as to the Navy."). In view of the cases referenced above, the undersigned agrees with the government that plaintiff's notice of her complaints to CRL does not satisfy the requirements for exhaustion of administrative remedies as to NIH, the federal agency.

However, plaintiff alleges that DHHS accepted her complaint and investigated it on the merits, which could mean, under relevant case law, that the government waived its right to assert failure to exhaust administrative remedies. As the Sixth Circuit discussed in *Hampton v. Caldera*, 58 Fed. Appx. 158, **3 (6th Cir. 2003), case law provides that merely accepting and investigating a complaint cannot serve to waive a timeliness defense. *See e.g.*, *Belgrave v. Pena*, 254 F.3d 384, 387 (2d Cir. 2001) (noting that all other circuits to have addressed the issue have held that accepting and investigating a discrimination complaint does not constitute waiver of an untimely exhaustion defense, and adopting this rule); *Boyd v. United States Postal Serv.*, 752 F.2d 410, 414 (9th Cir. 1985) ("The mere receipt

and investigation of a complaint does not waive objection to a complainant's

failure to comply with the original filing time limit when the later investigation

does not result in an administrative finding of discrimination."); *Oaxaca v. Roscoe*,

641 F.2d 386 (5th Cir.1981) (The court explicitly rejected "Oaxaca's contention

that the federal agency, by merely accepting and investigating a tardy complaint,

automatically waives its objection to the complainant's failure to comply with the

prescribed time delays.").  However, if the agency addressed the merits of the

complaint and did not raise the issue of untimeliness, such a defense may be

waived.  *Bowden v. United States*, 106 F.3d 433, 437 (D.C. Cir. 1997) (While

"agencies do not waive a defense of untimely exhaustion merely by accepting and

investigating a discrimination complaint," despite the fact that the plaintiff failed to

comply with the applicable thirty-day complaint-filing requirement, the

Immigration and Naturalization Service had waived this defense because it

"responded to the merits of [the plaintiff's] complaint without ever questioning its

timeliness."); *Sierra v. Hayden*, 254 F.Supp.3d 230 (D. D.C. 2017) ("Successfully

invoking the equitable doctrine of waiver requires a plaintiff to show not only that

an agency accepted and investigated a discrimination complaint, but also that it

decided it on the merits without mentioning timeliness.") (citation and quotation

marks omitted); *Kurtz v. McHugh*, 423 Fed. Appx. 572 (6th Cir. 2011) (Agencies

do not waive the defense of untimely exhaustion merely by accepting and

investigating a complaint of discrimination; "[r]ather, waiver occurs when the agency decides the complaint on the merits without addressing the untimeliness defense.") (quoting *Horton v. Potter*, 369 F.3d 906, 911 (6th Cir. 2004)).  Here, it cannot be determined, based solely on the complaint, whether the government accepted and investigated plaintiff's claims on the merits, and if so whether the timeliness issue raised.  While the government points to Mr. Small's affidavit stating that plaintiff never notified DHHS of her claim (suggesting by inference that therefore, there was no investigation), as noted, this affidavit cannot be considered in the context of a Rule 12(b)(6) motion.

Under the foregoing circumstances, the undersigned recommends denying the government's motion to dismiss Counts I and II without prejudice, permitting the parties to undertake a brief period of discovery solely relating to the issue of exhaustion of administrative remedies on plaintiff's ADEA claims, and allowing the government to file a motion for summary judgment on this issue after the brief period of discovery expires.

C.    Count III – Intentional Infliction of Emotional Distress (IIED)

In Count III, plaintiff asserts an IIED claim against the United States.  The government first argues that the plaintiff's IIED claim is preempted by the ADEA. "Federal employees must rely upon Title VII and other federal antidiscrimination statutes like the ADEA that apply to the federal government as the exclusive

remedy for combating illegal job discrimination." *Briggs v. Potter*, 463 F.3d 507, 517 (6th Cir. 2006) (claim against federal employer under 42 U.S.C. § 1981 dismissed as preempted by ADEA); *see also Pfau v. Reed*, 125 F.3d 927, 934 (5th Cir. 1997) (claim of intentional infliction of emotional distress against federal employer preempted by Title VII); *Rossiter v. Potter*, 257 F.Supp.2d 440 (D. Mass. 2003) (reversed on other grounds) (ADEA provides the exclusive remedy for federal employees alleging age discrimination, preempting all other claims whether based on federal, state, or common law); *Rattner v. Bennett*, 701 F.Supp. 7, 9 (D.D.C. 1988) (dismissing claim for intentional infliction of emotional distress against federal employer because ADEA provides exclusive remedy for age discrimination).

In this case, according to the amended complaint, plaintiff's claim of intentional infliction of emotional distress against the United States is based on "the allegations set forth in the preceding paragraphs"—that is, the paragraphs that alleged age discrimination and retaliation under the ADEA. (Dkt. 39 at Pg ID 1115, ¶ 242). Plaintiff further characterizes her claim for intentional infliction of emotional distress as based on "[d]efendants' conduct as outlined above." (Dkt. 39, Pg ID 1115, ¶ 243). Thus, according to the government, in the section of the amended complaint pertaining to intentional infliction of emotional distress (Dkt. 39, Pg ID 1115-Pg ID 1117), plaintiff alleges nothing specific or different from the

factual allegations presented elsewhere in the complaint and, as such, plaintiff's claim for intentional infliction of emotional distress should be dismissed.

In response, plaintiff says that her claim for intentional infliction of emotional distress is pleaded in the alternative to her claim for age discrimination under the ADEA.  Because there is still an outstanding factual dispute as to whether the DHHS was plaintiff's "employer" for purposes of an ADEA claim, plaintiff argues that her claim should not be dismissed.  That is, if DHHS was an "employer" for purposes of the ADEA, then the preemption doctrine might apply to bar a tort claim for intentional infliction of emotional distress.  If, on the other hand, DHHS was not an employer, then it may be held independently accountable for the tort.  Accordingly, plaintiff maintains that preemption is an issue that must be addressed through discovery and cannot be resolved at the pleading stage of the case.

While the Sixth Circuit has observed that "Federal employees must rely upon Title VII and other federal antidiscrimination statutes like the ADEA that apply to the federal government as the exclusive remedy for combating illegal job discrimination," *Briggs v. Potter*, 463 F.3d 507, 517 (6th Cir.2006), lower courts in this Circuit have concluded that the Sixth Circuit this does not necessarily mean that IIED-based claims are preempted by the ADEA or Title VII.  *Heimberger v. Pritzker*, 2014 WL 1050341, at *8 (S.D. Ohio Mar. 17, 2014).  In *Heimberger*, the

court recognized that a "[a] claim for intentional infliction of emotional distress presents a more difficult question." *Id*. (quoting *Wallace v. Henderson*, 138 F.Supp.2d 980, 984 (S.D. Ohio 2000) (Rice, J.)).  Various courts of appeals have reasoned differently regarding the reach of Title VII's preclusive effect.  *Id*. (Comparing *Brock v. United States*, 64 F.3d 1421, 1423 (9th Cir.1995) ("Title VII is not the exclusive remedy for federal employees who suffer 'highly personal' wrongs, such as defamation, harassing phone calls, and physical abuse ... When the harms suffered involve something more than discrimination, the victim can bring a separate claim.") with *Pfau v. Reed*, 125 F.3d 927, 932–34 (5th Cir.1997) (state law intentional infliction of emotional distress claims against federal employer preempted by Title VII).  In *Wallace*, the district court reasoned that the Supreme Court did not "intend [ ] to preclude plaintiffs from bringing claims which, although based on the same facts and circumstances as the Title VII claim, are based on a violation of a distinct and independent right." 138 F.Supp.2d at 986. The court concluded, that "to the extent that Plaintiff's intentional infliction of emotional distress claim is the result of retaliation in [the] workplace," the claim was preempted by Title VII; but "to the extent that [the] intentional infliction of emotional distress claim seeks redress for a 'highly personal injury,' beyond discrimination or retaliation, which was caused by [Defendant's] behavior, [the] claim remains." *Id*. (quoting *Brunetti v. Rubin*, 999 F.Supp. 1408, 1411 (D. Col.

1998)); *but see Roe v. Gates*, 2009 WL 3063393, at *14 (S.D. Ohio Sept. 21, 2009) (Dismissing IIED claim as precluded by Title VII, since the plaintiff's complaint "implie[d] that she [wa]s bringing her intentional infliction of emotional distress claim as a result of race discrimination or retaliation, rather than basing it on a violation of a distinct and independent right.").

In the view of the undersigned, the allegations in this case are more like those found to be preempted in *Heimberger* and *Roe v. Gates*, and unlike those in *Wallace*. Plaintiff's allegations are not of the same order of magnitude as those in *Wallace*, where, "[the defendants] subjected Plaintiff to constant harassment, including threats to his life, threats to his employment, threats of serious injury to him, harassing language and gestures, and stalking ... in retaliation for his cooperation in [an internal] investigation[ ]," and where his "repeated complain[ts]" to his supervisors were ignored. 138 F.Supp.2d at 981-82. As explained in *Heimberger*, the court borrowed the "highly personal injury" standard from the Ninth Circuit, which requires a serious "personal violation," such as rape, sexual assault, or stalking, defamation, and harassment with phone calls, resulting in the plaintiff suffering a miscarriage to establish an exception to Title VII's preclusive effect. *Id.* at *9 (citations omitted). Merely "highly offensive" conduct, such as "intentional touching and [ ] sexually suggestive and vulgar remarks," are "typical of the offensive workplace behavior giving rise to an action to remedy a

hostile work environment," and are properly considered under Title VII, not a separate cause of action. *Id*. (quoting *Sommatino v. United States*, 255 F.3d 704, 712 (9th Cir. 2001)).

In this case, plaintiff alleges that Dr. Romero subjected her to a pattern of discrimination, verbal abuse, and a hostile work environment, which forms the basis of her IIED claim. (Dkt. 39, Pg ID 55, ¶ 244). She alleges that he purposefully initiated a systematic regimen of abuse towards plaintiff so severe that she would either leave her job or be unable to perform the job, leading to dismissal. (Dkt. 39, Pg ID 56, ¶ 247). However, the allegations contained in plaintiff's complaint against Dr. Romero do not reveal the kind of "highly personal" allegations required to satisfy the exception to preemption. She alleges that he made increasingly unreasonable demands (¶ 33), punished her by using the silent treatment, engaged in excessive nitpicking and berating her for minor errors, made inappropriate personal remarks about her intelligence, mental health, and age (¶¶ 34, 38), bullied, intimidated and ridiculed her (¶¶ 35-36), and became irrationally angry with her, questioning if she had a psychiatric condition, or memory problems (¶¶ 37, 39). Plaintiff alleges that she feared for her physical safety because these "attacks" were often made in close physical quarters in a closed office. (Dkt. 39, ¶ 42). The abuse alleged led plaintiff to require psychiatric treatment. *Id*. at ¶¶ 44. Plaintiff further states that she was demoted, her office

was moved, and she was isolated.  (Dkt. 39, Pg ID 12-14).  Plaintiff alleges that

after she contacted Human Resources about the abusive work environment created

by Dr. Romero and went on medical leave, he tried to contact her during her

medical leave via text and voicemail messages, which she did not answer at the

direction of HR.  (Dkt. 39, Pg ID 15, ¶¶ 62-63).  Plaintiff says Dr. Romero's

attempts to contact her instigated intense anxiety and fear of reprisal. *Id*. at ¶ 64.  In

the view of the undersigned, the allegations made by plaintiff fall squarely into the

category of cases where IIED claims were found to be preempted by Title VII or

the ADEA.  None of the allegations involve alleged threats to her life, a physical

attack, or other highly personal injury.  Thus, the undersigned concludes that

plaintiff's IIED claim is preempted by the ADEA.

As to plaintiff's argument that she pleads the IIED claim in the alternative

and that if DHHS is found not to be her employer, she can then pursue her IIED

claim, the undersigned is not persuaded.  Plaintiff expressly contends in her

response brief that the government is a joint employer with CRL.  And, the

government concedes, for purposes of this motion, that it is a joint employer with

CRL.  Thus, there is no basis for the Court to conclude that plaintiff's IIED claim

is not preempted by the ADEA.[4]  Plaintiff's IIED claim should, therefore, be

---

[4] Should the Court accept plaintiff's argument that she should be permitted to go forward
with her IIED claim as alternatively stated against the government because DHHS is *not* her

dismissed on this basis.

Nonetheless, even if the court were to accept plaintiff's argument that dismissal based on preemption is inappropriate, the government maintains that she failed to exhaust her administrative remedies under the FTCA before filing this lawsuit. The government brings this portion of its motion under Rule 12(b)(1), contending that plaintiff's failure to exhaust her IIED claim under the FTCA is a jurisdictional defect. Indeed, the Sixth Circuit has appeared to endorse such an analysis. *See e.g.*, *Singleton v. United States*, 277 F.3d 864, 872 (6th Cir. 2002) (affirming district court's grant of motion to dismiss for failure to exhaust FTCA claim for IIED based on lack of subject matter jurisdiction). However, the Sixth Circuit more recently called this conclusion into question in *Hawver v. U.S.*, 808 F.3d 693 (6th Cir. 2015) (expressly overruling *Singleton v. United States*) (citing *U.S. v. Kwai Fun Wong*, --- U.S. ---; 135 S. Ct. 1625 (2015)). Though the facts of *Hawver* involve a question of whether the statute of limitations in the FTCA presents a jurisdictional question, the court's decision directly addressed its prior holding in *Singleton*. And, *Singleton* solely involved a question of exhaustion under the FTCA. Thus, if *Singleton* is overruled, then, whether plaintiff has exhausted in this instance would seem to be subject to a Rule 12(b)(6) analysis.

---

employer, her IIED claim still must be dismissed, as discussed *infra* because she failed to her exhaust her administrative remedies.

The FTCA allows a claimant to bring a cause of action "against the United States, for money damages ... for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the government while acting within the scope of his office or employment[.]"  28 U.S.C.A. § 1346(b)(1).  As a prerequisite to suit under the FTCA, a claim must be presented to and denied by the agency allegedly involved in the tort.   Specifically, 28 U.S.C. § 2675(a) provides:

> An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail.

*Id*.  While failure to exhaust administrative remedies is an affirmative defense, the attachments to plaintiff's complaint establish that she did not exhaust her administrative remedies prior to filing suit.  Here, plaintiff has not alleged that she presented a tort claim to NIH or to DHHS before filing suit in this court.  (Dkt. 39).  Notably, plaintiff attaches her FTCA Claim for Damage, Injury, or Death, dated November 30, 2016, as amended on January 4, 2017 to her amended complaint.  (Dkt. 39-1, Ex. 2).  Yet, this lawsuit was filed in state court on August 5, 2016 and removed to federal court on October 14, 2017.  (Dkt. 1).  The undersigned agrees

that plaintiff did not exhaust her administrative remedies prior to filing suit.

Plaintiff points to *U.S. v. Kwai Fun Wong*, --- U.S. ---; 135 S. Ct. 1625 (2015)[5] in which the Supreme Court held that the statute of limitations in the FTCA was not jurisdictional and was subject to equitable tolling.[6] Plaintiff maintains that, for the same reasons she cites regarding exhaustion of her other claims, her FTCA filings should be deemed equitably tolled. She says the relevant federal agency received notice of her claims and had a full and fair opportunity to investigate and resolve her claims. Thus, she maintains, equitable tolling should be applied.

The government contends, however, that the cases on which plaintiff relies only address the statutes of limitations contained in the FTCA as set forth in 28 U.S.C. § 2401(b), and concludes that they are not jurisdictional thus rendering them subject to tolling. The government's motion, on the other hand, is not based on § 2401(b). Rather, it is premised on § 2675(a), which it says, exhaustion remains a jurisdictional requirement. Hence, the government maintains that the Court must dismiss plaintiff's tort claim under Fed. R. Civ. P. 12(b)(1) for the

---

[5] Plaintiff also cites *Nichols v. Muskingum College*, 318 F.3d 674, 677 (6th Cir. 2003), which is a Title VII and not an FTCA case, and is thus not instructive.

[6] "A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues or unless action is begun within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented." 28 U.S.C. § 2401(b).

simple reason that she did not file an administrative claim before filing a tort claim in this Court.

Notably, as previously discussed, the Sixth Circuit, in applying the *Kwai Fun Wong* decision, overruled its prior decisions concluding that the FTCA's exhaustion requirement is jurisdictional. *See e.g.*, *Prince v. NLRB*, 2017 WL 1424983 (S.D. Ohio Apr. 20, 2017) ("Because the administrative exhaustion requirement is a condition precedent to filing suit and is not jurisdictional, defendant's motion to dismiss plaintiffs' FTCA claim is appropriately considered under Rule 12(b)(6) rather than Rule 12(b)(1).") (citing *Hawver v. U.S.*, 808 F.3d 693 (6th Cir. 2015), expressly overruling *Singleton v. United States*, 277 F.3d 864, 872 (6th Cir. 2002) (Holding that the court lacked jurisdiction because the plaintiff had not filed a claim with the appropriate agency under § 2675(a))).[7]  However, nothing in *Kwai Fun Wong* or subsequent Sixth Circuit cases suggests that the failure to file a claim under 2675(a) is subject to "equitable tolling."  Because there

_____

[7] Other courts have reached a different conclusion post-*Kwai Fun Wong*.  *See e.g.*, *Abdoulaye v. Cimaglia*, 2018 WL 1890488 (S.D.N.Y. Mar. 29, 2018) ("Unlike the jurisdictional exhaustion requirement in section 2675(a), the time bars in section 2401(b) are non-jurisdictional and subject to equitable tolling.") (citing *Kwai Fun Wong*); *Dukert v. United States*, 2016 WL 10721258 (D. N.M. Jan. 6, 2016) ("Because *Wong* addressed only the time limitations set forth in subsection (b), Defendant appears to be correct that the time limitations under § 2675(a) remain a 'jurisdictional prerequisite.'").  Notably, nothing in *Kwai Fun Wong* suggests that *McNeil v. United States* is overruled.  Even the Sixth Circuit, pre-*Hawver*, reached the same conclusion, in an unpublished decision.  *See Brooks v. Silva*, 2015 WL 12762112 (6th Cir. Apr. 6, 2015) (Because [plaintiff] failed to satisfy the administrative claim requirement in 28 U.S.C. § 2675(a), and the requirement is considered jurisdictional, *McNeil v. United States*, 508 U.S. 106, 113 (1993), the court lacked subject matter jurisdiction to hear his FTCA claims…").

is no deadline in § 2675(a), it does not appear that any deadline could be tolled.

Plaintiff admits that she did not exhaust her FTCA remedies before filing this lawsuit and offers no excuse for failing to do so. She does not claim futility or an inability to comply with § 2675(a). *Foster v. Federal Emergency Management Agency*, 128 F.Supp.3d 717, 728 (E.D.N.Y. 2015) (quoting *Lozano v. Montoya Alvarez*, — U.S. —, 134 S.Ct. 1224, 1231-32 (2014) (internal citation and quotation marks omitted)) ("A party, therefore, may avoid having a suit barred under the exhaustion requirement of the FTCA for failing to file a timely administrative claim if he pursued his rights diligently but some extraordinary circumstance' prevents him from meeting a deadline."). Her struggles with exhausting her ADEA claims do not simply "cross-over" to her FTCA claim, which is an entirely different exhaustion process. And, she does not cite any authority to support her position in this regard. Based on the attachments to plaintiff's amended complaint, it is clear that she did not exhaust her administrative remedies pursuant to § 2675(a) before filing suit. Just as in *Foster v. FEMA*, *supra*, plaintiff, by her own admission, did not present a claim or exhaust her administrative remedies under the FTCA, and given that "'[p]laintiffs cite no precedent, and this Court is aware of none, in which a district court has permitted a plaintiff to proceed with an FTCA claim without exhausting administrative remedies,' the Court concludes that plaintiffs' claims under the FTCA against

FEMA must be dismissed pursuant to Rule 12(b)(6) for failure to exhaust their administrative remedies." *Foster*, 128 F.Supp.3d at 729 (quoting *Lipkin v. S.E.C.*, 468 F.Supp.2d 614, 616 (S.D.N.Y.2006)).[8]  Thus, her IIED claim should be dismissed without prejudice under Rule 12(b)(6) because she failed to exhaust her administrative remedies.

## IV.   RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that the United States' motion to dismiss be **GRANTED** in part and **DENIED** in part.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and E.D. Mich. Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).

---

[8]  Because the undersigned decides this matter under Rule 12(b)(6), rather than Rule 12(b)(1), no consideration is given to the affidavits provided by the government.  Rather, the undersigned relies solely on plaintiff's complaint and the attachments thereto.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed.R.Civ.P. 72(b)(2); E.D. Mich. Local Rule 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: September 10, 2018          s/Stephanie Dawkins Davis
                                  Stephanie Dawkins Davis
                                  United States Magistrate Judge

## CERTIFICATE OF SERVICE

I certify that on September 10, 2018, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to all counsel and/or parties of record.

                                  s/Tammy Hallwood
                                  Case Manager
                                  (810) 341-7887
                                  tammy_hallwood@mied.uscourts.gov