UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JULIE POWERS,                                    Case No.: 16-13668

      Plaintiff,                               Paul D. Borman
v.                                               United States District Judge

UNITED STATES &                                  Michael J. Hluchaniuk
SECRETARY OF THE                                 United States Magistrate Judge
DEPARTMENT OF HEALTH
AND HUMAN SERVICES,

      Defendants.
_____/

**REPORT AND RECOMMENDATION**
**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (ECF No. 70)**

## I.   PROCEDURAL HISTORY

Plaintiff, Julie Powers, filed a *pro se* complaint in state court on August 4,

2016, which was removed to federal court on October 14, 2016 pursuant to 28

U.S.C. § 1442(a)(1).  (ECF No. 1).  On October 6, 2016, the non-governmental

defendants, Charles River Laboratories (CRL) and Susan Jackson filed a motion to

dismiss, or, in the alternative, to compel arbitration.  (ECF No. 6).  Plaintiff also

moved to amend her complaint (ECF No. 24) and the United States did not object.

(ECF Nos. 22, 23).  The motion to compel arbitration was granted and plaintiff

amended her complaint, containing only claims against the United States, on

October 13, 2017.  (ECF Nos 34, 38, 39).  In Count I, she alleges age discrimination in violation of the Age Discrimination in Employment Act of 1967 (ADEA) against the Secretary of DHHS.  (ECF No. 39 at PageID.1106-1111).  In Count II (incorrectly labeled as Count IV), she alleges retaliation in violation of the ADEA against the Secretary of DHHS.  (ECF No. 39, PageID.1111-1114).

On November 27, 2017, the United States filed a motion to dismiss.  (ECF No. 44).  The first two counts—the ADEA claims—were dismissed without prejudice.  (ECF Nos. 58, 65).  The parties were given a limited period of discovery on the issue of exhaustion of plaintiff's ADEA claims.  The government was allowed to file a motion for summary judgment on this issue after the brief period of discovery.  The third and final count of the complaint was dismissed with prejudice.

On September 3, 2019, the government filed its motion for summary judgment arguing that plaintiff did not exhaust administrative remedies before bringing her ADEA claims in this Court.  (ECF No. 70).  Plaintiff responded and was given an opportunity to file a sur-reply, to which the government responded. (ECF Nos. 73, 78, 79).

This matter was referred to the undersigned for all pretrial matters, (ECF No. 77), and is now ready for report and recommendation.

For the reasons stated below, the undersigned **RECOMMENDS** that defendants' motion for summary judgment be **GRANTED**.

## II.   FACTUAL BACKGROUND

### A.   Allegations Against, and Communications with, CRL

From 1992 to 2015, plaintiff Julie Powers worked in Detroit, Michigan, as an executive assistant in the Perinatology Research Branch (PRB) of the National Institute of Child Health and Human Development (NICHHD), within the National Institutes of Health (NIH).  (ECF No. 39, PageID.1063-1064, ¶¶ 9, 10; PageID.1066, ¶ 20).[1]  NIH is an agency within the United States Department of Health and Human Services (DHHS).[2]  Throughout her time at PRB, plaintiff was employed by a series of private companies that contracted with NIH to provide administrative services. (*Id.* at PageID.1064, ¶ 15).  According to the government, at all relevant times, Charles River Laboratories, Inc. (CRL) was the government contractor that employed plaintiff.  (*Id.* at PageID.1066, ¶ 21).  Plaintiff provided services to the Chief of PRB, Roberto Romero, M.D., an employee of DHHS.  (*Id.* at PageID.1064, ¶¶ 12-14).

---

[1] The basic background facts regarding plaintiff's employment derive from her amended complaint.  Her complaint is unverified.  Although on summary judgment, the Court assesses evidence that would admissible at trial to determine if there is a question of material fact, the government does not contest the facts laid out in the complaint.  Thus, for purposes of providing this background information, the undersigned will rely in small part on the allegations in the complaint.

[2] https://www.nih.gov/about-nih/who-we-are.

In December 2006, Romero allegedly gave plaintiff the title "PRB Chief of Staff" and plaintiff began to manage and supervise two other administrative personnel.  (*Id.* at PageID.1067, ¶ 28; PageID.1068, ¶ 31).  Plaintiff claims that particularly after 2009, Dr. Romero "initiated an increasingly hostile work environment" of "bullying, intimidation, ridicule, mockery, threats, public humiliation, gas-lighting and other forms of abusive behavior."  (*Id.* at PageID.1069, ¶ 35).  Plaintiff claims that many of Dr. Romero's remarks were related to her age. (*Id.* at PageID.1069-1070, ¶ 38).

In 2012, plaintiff began psychiatric treatment, to cope with the work environment.  (*Id.* at PageID.1071, ¶ 44).  In 2013, Dr. Romero demoted her twice. These actions are the basis of her age discrimination claim.  In April 2013, Dr. Romero put a younger woman who had been working there for only a year in plaintiff's position.  (ECF No. 70-2, PageID.1413, at p. 11 – Plaintiff's Deposition; ECF No. 73-8, PageID.1538, ¶ 9).  Plaintiff was physically moved out of her office to where the junior administrators sat.  (ECF No. 70-2, PageID.1413, at p. 11). Plaintiff was no longer chief of staff.  (*Id.* at p. 12).  She was demoted again in August 2013 and replaced again by a younger woman.  (ECF No. 73-8, PageID.1538, ¶ 11).  The sign for her title on the door to her new office was left blank.  (ECF No. 70-2, PageID.1414, at p. 14).  Plaintiff's job duties changed after these demotions; she began doing the work of the junior staff, while the younger

women who took her position worked directly with Dr. Romero.  (ECF No. 70-2, PageID.1414, at p. 15-16).  Plaintiff did not contact anyone about the first or second demotion because she was afraid of retaliation or that she would lose her job.  (ECF No. 70-2, PageID.1417, at p. 26).  After these demotions, according to plaintiff, Dr. Romero continued verbally abusing her.  (ECF No. 73-8, PageID.1539, ¶ 14).

In December 2013, plaintiff's level of anxiety and depression rendered her unable to perform her job, and she went on medical leave.  (Dkt. 39, PageID.1074, ¶¶ 60-61).  On December 20, 2013, she was contacted by CRL's Human Resources Representative and Benefits Specialist, Kim Ross, who notified plaintiff that she would forward paperwork for FMLA and short term disability.  (*Id.* at PageID.1075, ¶ 62).  CRL first put plaintiff on short-term disability for six months, then extended her medical leave periodically based on questionnaires submitted by plaintiff's therapist and on periodic discussions between plaintiff and Ross.  (*Id.* at PageID.1075, ¶ 65).  Plaintiff continued mental health treatment.  (*Id.* at PageID.1075-1076, ¶¶ 65, 67).

In September 2014, plaintiff informed Ross that her therapist had determined that her stressful working conditions, and specifically working for Dr. Romero, had caused her medical condition.  (*Id.* at PageID.1076, ¶ 71; ECF No 70-2, PageID.1420).  In November 2014, plaintiff says she informed Ross of "the exact

nature of her work-related harassment" and then, a few days later, informed Susan

Jackson, CRL Division Director of Human Resources, of the same.  (Dkt. 39,

PageID.1076-1077, ¶¶ 72, 75).  Plaintiff says that Jackson promised that CRL

would conduct an immediate investigation and report the results to NIH.  (*Id.* at

PageID.1079, ¶ 79).  Between November 2014 and March 2015, plaintiff

communicated with Jackson a number of times regarding her complaints about

PRB, allegedly providing Jackson examples of a hostile and abusive environment

and names of witnesses who could support her claims.  (*Id.* at PageID.1080, ¶ 85).

However, by mid-February, Jackson still had not contacted any of plaintiff's

witnesses.  (ECF No. 73-8, PageID.1540, ¶ 24).

On February 9, 2015, plaintiff's clinical therapist completed an ADA form

and faxed the form, along with her psychotherapy intake notes, to Ross at CRL.

(ECF No. 73-8, PageID.1540, ¶ 25).  The therapist indicated that plaintiff was

permanently disabled and could not return to work, and that her PTSD was in

direct response to excessive emotional and verbal abuse she experienced with Dr.

Romero.  (*Id.*).

Sometime after February 19, 2015 (but no later than the end of March 2015),

plaintiff contacted the EEOC office in Detroit to obtain information regarding

reporting her claim of harassment.  (ECF No. 70-2, PageID.1418, at 29:6-9).

EEOC employees "Dawn" and Ms. Coburn informed her that she needed to seek

relief from CRL, not NIH, because CRL was her employer.  (ECF No. 70-2, PageID.1418, at 31:11-14).  Dawn told her that she had 300 days to file a claim from when she first reported harassment to CRL, which plaintiff believes was November 2014 when she first communicated with Susan Jackson, CRL human resources representative.  (ECF No. 70-2, PageID.1421).

On March 10, 2015, Jackson informed plaintiff that she could not substantiate plaintiff's claims and informed plaintiff that her employment with CRL was terminated.  (ECF No. 73-8, PageID.1541, ¶ 27).  On June 3, 2015, plaintiff sent a letter to David Johst, CRL executive vice president of human resources, informing him of Jackson's investigation and providing him evidence of her demotions and her belief that the demotions violated federal law.  (ECF No. 73-8, PageID.1541, ¶ 28).  CRL attorney Scot Plotnik informed her that he did not find any actionable claims.  (ECF No. 73-8, PageID.1541, ¶ 29).

Having found no relief from CRL employees, on July 21, 2015, plaintiff filed a claim against CRL with the EEOC.  (ECF No. 73-8, PageID.1541, ¶ 30).  EEOC employee Ms. Coburn interviewed plaintiff.  She determined that the time had passed for plaintiff's age discrimination claim, but accepted the charge of retaliation related to her termination.  (*Id.*).

After the EEOC claim was submitted, CRL was sent an agreement to mediate the claims, but refused to.  At that point, the EEOC gave plaintiff a right to

sue letter (the date of this letter is unclear as the letter is not in evidence at this time).  (ECF No. 70-2, PageID.1421, at p. 44). In her brief, plaintiff says she received notice of her right to sue from the EEOC on March 14, 2016, but there is no correlating document in evidence to verify this.  (ECF No. 73, PageID.1479). On August 4, 2016, plaintiff filed suit against CRL, Susan Jackson, and Dr. Romero in state court under the Elliott Larsen Civil Rights Act.  On October 14, 2016, the complaint was removed to this Court.  (ECF No. 1).

      B.    <u>Communications with DHHS/NIH</u>

In October 2015, plaintiff contacted Dr. Cathy Spong to find out whether NIH had any indication that she made a report against Dr. Romero with CRL.  At that time, Dr. Spong was the acting director of NICHHD.  (ECF No. 70-2, PageID.1418).  On October 23, 2015, she sent a letter to Dr. Spong outlining her complaints against Romero—which included the age discrimination and hostile work environment complaints, as well as complaints of unethical misconduct perpetrated by Dr. Romero unrelated to the discrimination claim.  (ECF No. 70-8, PageID.1453-55).  Attached to this letter was the letter plaintiff sent to David Johst at CRL.  (ECF No. 70-2, PageID.1419).

Plaintiff's communication to Dr. Spong was forwarded to John Jarman, who also worked at NICHHD.  (ECF No. 73-8, PageID.1542, ¶ 33).  Maritza Zeiberg, Director of the Division of Program Integrity (DPI) sent plaintiff a letter dated

November 10, 2015 in response to the letter to Dr. Spong.  Zeiberg indicated that

DPI was assessing the information and wanted to schedule a phone call with

plaintiff.  (ECF No. 73-5, PageID.1530).  The phone call took place on December

4, 2015.

Sometime after the December 4th phone meeting, NIH contracted with a

third party to conduct an investigation into plaintiff's claims against CRL and Dr.

Romero.  (ECF No. 70-9, PageID.1456).  On February 22, 2016, Latif Doman

emailed plaintiff to inform her that he had been retained to conduct the

investigation.  (ECF No. 73-11, PageID.1558).  Plaintiff's allegations of age

discrimination and harassment apparently formed part of Doman's investigation.

In a February 24, 2016 email to plaintiff, he outlined questions he had for her,

including questions regarding the basis for her discrimination and harassment

complaints.  (*Id.* at PageID.1559).

Doman and plaintiff communicated again via email in April and May 2016.

On April 27th, Doman advised plaintiff to consult with a lawyer regarding the

EEO process.  He explained how the EEO process worked, as far as he was aware.

He told her that the NIH was required to give her a copy of the report of

investigation (ROI) and that after she received the ROI, NIH would advise her that

she had the right to file a lawsuit in federal court or request that NIH make a final

agency decision.  He said there were deadlines associated with either process, but

that her last deadline to file a lawsuit was triggered by the date on which she received the final agency decision, if she chose the latter option.  He warned her again not to rely on his statements because he was not her attorney and was not licensed to practice law in Michigan.  (ECF No. 73-11, PageID.1560).

On May 24, 2016, Doman emailed plaintiff informing her that he submitted his report and that she should be receiving the ROI from NIH shortly.  He told her he found a basis for the allegations of harassment and hostile work environment. (ECF No. 73-11, PageID.1561).

Plaintiff did not receive a copy of the ROI from NIH.  She submitted a FOIA request for the ROI, but was told that the ROI would not be released because it was being reviewed by the Office of Equity, Diversity, and Inclusion (EDI).  On July 19, 2016, plaintiff sent an email to Darlease Hyman and Kimberly Kirkpatrick, presumably employees in some capacity with NIH, about her attempts to obtain the ROI and inquired with them about the status of her claims investigated by Latif Doman.  (ECF No. 70-7, PageID.1446).  Chinara Brown, EEO counselor with EDI contacted plaintiff on July 21st.  Brown told plaintiff that EDI was not the office that processed the allegations for investigation.  However, Brown told plaintiff she could file an EEO pre-complaint by filling it out online or completing the form Brown attached to the email.  Brown also attached an overview of the complaints process and a document explaining rights and responsibilities in the complaints

process.  (ECF No. 70-7, PageID.1445).  After plaintiff asked whether her deadline to file a claim passed considering the conduct took place in 2013, Brown replied that plaintiff was required to report the incident within 45 days of the last incident, but plaintiff still had the right to file a pre-complaint, but her "claims may be dismissed should [she] file a formal complaint if [her] allegations aren't resolved during the pre-complaint stage for untimeliness." (ECF No. 70-7, PageID.1448-49).

Plaintiff did not file a pre-complaint or formal complaint with an EEO counselor.  (ECF No. 70-4, PageID.1434).  According to Kenrick Small, Branch Chief of the Formal Complaints Branch, Division of Resolution and Equity in the Office of EDI, there is no record of plaintiff contacting EDI to initiate a formal or informal complaint of discrimination.  Additionally, "EDI is the sole office within NIH, DI-HIS to which an individual can initiate an administrative Equal Employment Opportunity (EEO) complaint against NIH." (ECF No. 70-3, PageID.1431-32).  Plaintiff disagrees that she never contacted anyone in the Office of EDI about her complaints because she was in communication with Chinara Brown, EEO counselor in July 2016 about the investigation into her complaints. (ECF No. 73, PageID.1483; ECF No. 70-7, PageID.1445-52).

Plaintiff obtained the ROI in 2019 through discovery requests.  She produced three pages of the ROI.  From these pages the following information can

be gleaned.  Doman submitted the ROI on May 15, 2016.  The Agency EEO

number is left blank, as plaintiff did not submit an EEO complaint.  (ECF No. 73-

12, PageID.1562).  The document indicates that the NIH was authorized to conduct

an investigation into plaintiff's complaints pursuant to 29 C.F.R. § 1614.108.  It is

clear from the complaint synopsis of the ROI that the investigation was targeted at

plaintiff's complaints of harassment and hostile work environment created by Dr.

Romero.  (ECF No. 73-12, PageID.1563-64).  Neither party attached the full report

to their briefs.  Thus, the conclusion drawn is unclear, as is any further action or

discussion by NIH.

## III.   ANALYSIS AND RECOMMENDATIONS

### A.   Standard of Review

When a party files a motion for summary judgment, it must be granted "if

the movant shows that there is no genuine dispute as to any material fact and the

movant is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(a).  "A party

asserting that a fact cannot be or is genuinely disputed must support the assertion

by: (A) citing to particular parts of materials in the record...; or (B) showing that

the materials cited do not establish the absence or presence of a genuine dispute, or

that an adverse party cannot produce admissible evidence to support the fact."

Fed.R.Civ.P. 56(c)(1).  The standard for determining whether summary judgment

is appropriate is "whether the evidence presents a sufficient disagreement to

require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)).  Furthermore, the evidence and all reasonable inferences must be construed in the light most favorable to the non-moving party.  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Where the movant establishes the lack of a genuine issue of material fact, the burden of demonstrating the existence of such an issue shifts to the non-moving party to come forward with "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  That is, the party opposing a motion for summary judgment must make an affirmative showing with proper evidence and must "designate specific facts in affidavits, depositions, or other factual material showing 'evidence on which the jury could reasonably find for the plaintiff.'" *Brown v. Scott*, 329 F.Supp.2d 905, 910 (6th Cir. 2004). In order to fulfill this burden, the non-moving party need only demonstrate the minimal standard that a jury could ostensibly find in his favor.  *Anderson*, 477 U.S. at 248; *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). However, mere allegations or denials in the non-movant's pleadings will not satisfy this burden, nor will a mere scintilla of evidence supporting the non-moving party.  *Anderson*, 477 U.S. at 248, 251.

The Court's role is limited to determining whether there is a genuine dispute about a material fact, that is, if the evidence in the case "is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. Such a determination requires that the Court "view the evidence presented through the prism of the substantive evidentiary burden" applicable to the case. *Id*. at 254. Thus, if the plaintiff must ultimately prove its case at trial by a preponderance of the evidence, on a motion for summary judgment the Court must determine whether a jury could reasonably find that the plaintiff's factual contentions are true by a preponderance of the evidence. *See id.* at 252-53.  Finally, if the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the movant is entitled to summary judgment. *Celotex*, 477 U.S. at 323.  The Court must construe Rule 56 with due regard not only for the rights of those "asserting claims and defenses that are adequately based in fact to have those claims and defenses tried to a jury," but also for the rights of those "opposing such claims and defenses to demonstrate in the manner provided by the Rule, prior to trial, that the claims and defenses have no factual basis." *Id*. at 327.

B.    Discussion

The government concedes, for purposes of this motion, that there is a joint employer relationship, i.e. that plaintiff was employed jointly by the private

14

company CRL and the federal government through NIH.  (ECF No. 70, PageID.1390, n. 1).  Plaintiff believes a joint employer relationship exists.  (ECF No. 73, PageID.1485).  Plaintiff agrees that she did not exhaust administrative remedies on her ADEA claims against DHHS.  She acknowledges that she did not contact an EEO counselor within 45 days of the alleged discriminatory action and that she did not give 30 days' notice of an intent to file suit within 180 days of the discriminatory action.  (ECF No. 70-4, PageID.1433-34; *see generally* ECF No. 73, PageID.1486-87).  However, she asserts that the principles of equitable tolling, estoppel, and waiver apply here and save her claims.  (*Id.*).

"When Congress authorized federal employees to sue the federal government for violation of the civil rights laws, it conditioned such authorization on the 'plaintiff's satisfaction of 'rigorous administrative exhaustion requirements and time limitations.'"  *Horton v. Potter*, 369 F.3d 906, 910 (6th Cir. 2004) (quoting *McFarland v. Henderson,* 307 F.3d 402, 406 (6th Cir.  2002).  One of these requirements is that the "aggrieved person must initiate contact with a[n EEO] Counselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action." 29 C.F.R. § 1614.105(a)(1) (2003). Timely contact with an EEO counselor is an administrative remedy that a federal employee must invoke

before she may bring a claim of employment discrimination in federal district court. *Benford v. Frank,* 943 F.2d 609, 612 (6th Cir. 1991).

As an alternative, the employee "can decide to present the merits of his claim to a federal court in the first instance." *Stevens v. Dep't of Treasury*, 500 U.S. 1, 5 (1991) (citing 29 U.S.C. § 633a(b) and (c)). If the plaintiff takes the latter route, however, the ADEA still requires formal notice to the EEOC before filing suit:

> When the individual has not filed a complaint concerning age discrimination with the Commission, no civil action may be commenced by any individual under this section until the individual has given the Commission not less than thirty days' notice of an intent to file such action. Such notice shall be filed within one hundred and eighty days after the alleged unlawful practice occurred.

29 U.S.C. § 633a(d); *see also Ivey v. Rice*, 759 F. Supp. 394, 402 (S.D. Ohio 1991)[3] ("Where a plaintiff elects to bypass the administrative process in whole or in part, he must comply with the notice requirement of § 633a(d) or face dismissal."), approved in *Anderson v. Tennessee Valley Authority*, 991 F.2d (6th Cir. 1993) (table); *Hunter v. Sec'y of the Army*, 565 F.3d 986 (6th Cir. 2009) ("[A] federal employee may directly sue in federal district court [under the ADEA] so long as the employee gives the EEOC notice of an intent to sue within 180 days of the allegedly discriminatory act and then waits 30 days before filing the action.").

---

[3] Affirmed 961 F.2d 1577 (6th Cir. 1992).

Failure to comply with either of the above-described procedures constitutes a failure to exhaust administrative remedies and bars an employee from bringing suit in federal court.  *See McKnight*, 282 Fed. Appx. at 398-99 (affirming dismissal of ADEA class claim for failure to exhaust or comply with notice requirement); *Anderson v. TVA*, 1993 WL 113730, at *6-8 (6th Cir. Apr. 13, 1993) (affirming dismissal of ADEA claim where the plaintiff failed either to fully exhaust administrative remedies or provide notice of intent to file suit).

However, the Sixth Circuit has stated, in addressing an ADEA claim, that "a failure to exhaust administrative remedies ... is not a jurisdictional bar, but rather a condition precedent to an action in federal court."  *McKnight v. Gates*, 282 Fed. Appx. 394, 397 n. 2 (6th Cir. 2008) (citing *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393-98 (1982); *Mitchell v. Chapman*, 343 F.3d 811, 819-20 (6th Cir. 2003)). As such, it is subject to waiver, estoppel, and equitable tolling. *McFarland,* 307 F.3d at 406.

### 1.    Equitable Tolling

Though the obligation to complete one of the two methods of exhaustion is a precondition to suit that is subject to equitable tolling, the Supreme Court has made clear that tolling should be allowed "only sparingly." *Irwin v. Dep't of Veterans Affairs,* 498 U.S. 89, 95-96 (1990).  The Sixth Circuit has similarly noted that equitable tolling is "available only in compelling cases which justify a departure

from established procedures." *Puckett v. Tennessee Eastman Co.,* 889 F.2d 1481, 1488 (6th Cir.1989).

The decision whether to allow equitable tolling is fact specific and considers several factors. These factors are not exhaustive and none is controlling:

> (1) whether the plaintiff had actual notice of the time restraint; (2) whether she had constructive notice of the time restraint;[4] (3) the degree of diligence exerted in pursuing her rights; (4) the degree of prejudice to the defendant; and (5) the reasonableness of plaintiff's ignorance of the time constraint.

*Steiner v. Henderson*, 354 F.3d 432, 435 (6th Cir. 2003) (citing *EEOC v. Ky. State Police Dep't*, 80 F.3d 1086, 1094 (6th Cir. 1996). Evidence that an employer's affirmative misrepresentations misled or "tricked" the plaintiff into missing a deadline can bear on the reasonableness of the plaintiff's ignorance of the time constraint. *Steiner*, 354 F.3d at 436. Plaintiff bears the burden of demonstrating that equitable tolling applies to her case. *Allen v. Yukins,* 366 F.3d 396, 401 (6th Cir. 2004).

Plaintiff raises a number of reasons why she did not exhaust administrative remedies. She argues that she did not know about the federal process for bringing

---

[4] Whether the claimant had notice of the time restraint, or notice of the process in general, appears in the agency's interpretation of the EEO process. 29 C.F.R. § 1614.105, the section on pre-complaint processing, provides that the agency or the EEOC "shall extend the 45-day time limit . . . when the individual shows that he or she was not notified of the time limits and was not otherwise aware of them."

a claim of age discrimination and retaliation against the federal government. (ECF No. 73, PageID.1486). Plaintiff also points out that she communicated her complaints to Dr. Spong, that she communicated with EDI in July 2016, and that she diligently pursued her claims against CRL. She says that, since her complaints were already investigated by Latif Doman and the ROI was complete, it would have been "futile to repeat the process." (ECF No. 73, PageID.1491). In response to interrogatories, plaintiff also claims that mental incapacity prevented her from pursuing administrative remedies. (*See* ECF No. 70-4, PageID.1433).

As an initial matter, as this Court observed in ruling on the government's motion to dismiss, plaintiff's complaints made to CRL directly and made against CRL to the Michigan EEOC office in Detroit do not satisfy exhaustion of remedies of her claims against DHHS. Specifically, then-Magistrate Judge Davis stated the following in regard to the government's argument:

> For purposes of its motion, the government assumes that NIH is a joint employer with CRL. (Dkt. 55, p. 1, n. 1). However, even assuming NIH and CRL were "joint employers," defendant points out that plaintiff cites no cases supporting the proposition that reporting discrimination to a private contractor or to the EEOC constitutes exhaustion of a discrimination claim against a federal agency. In contrast, the government argues that in the "joint employer" context, the processes for exhaustion for a federal agency and a private employer are independent and "suing a private entity and a federal agency as 'joint employers' does not exempt a complainant from complying with the express prerequisites to suit applicable to federal employees."

> *Watson v. Tenn. Valley Authority*, 867 F.Supp.2d 1215,
> 1225 (N.D. Ala. 2012); *see also Chandra v. Bowhead
> Science & Technology*, LLC, 2017 WL 2729967, *8
> (N.D. Tex. June 26, 2017) (granting Army's motion to
> dismiss for failure to exhaust where plaintiff had filed
> EEOC claim against federal contractor but failed to file
> EEO claim within Army); *Scott v. Moniz*, 2014 WL
> 12539672, *4 (W.D. Wash. Nov. 17, 2014) ("An
> individual who is employed by both a private staffing
> firm and a federal agency, who intends to hold both
> employers liable for [discrimination], must follow
> separate sets of pre-suit administrative procedures. . .");
> *Frank v. England*, 313 F.Supp.2d 532, 537 (D. Md.
> 2004) ("[I]t would be unreasonable to consider the Navy
> a second employer under Title II, but exempt Plaintiff
> from exhausting his administrative remedies as to the
> Navy."). In view of the cases referenced above, the
> undersigned agrees with the government that plaintiff's
> notice of her complaints to CRL does not satisfy the
> requirements for exhaustion of administrative remedies
> as to NIH, the federal agency.

(ECF No. 58, PageID.1276-77).  Plaintiff's argument that she exhausted

administrative remedies for her ADEA claims against DHHS, or that the time to do

so should be tolled, because she "diligently pursued her administrative remedies

with her primary employer, Charles River Laboratories, a Federal Government

Contractor" who assured her it would investigate the complaints and report the

results to the NIH is unavailing.  (ECF No. 73, PageID.1485-86).  There is no

authority to support the proposition that those efforts constitute exhaustion of

remedies against DHHS under the ADEA. In view of the cases referenced above,

the undersigned concludes here that plaintiff's notice of her complaints to CRL

does not satisfy the requirements for exhaustion of administrative remedies as to

NIH, the federal agency, and do not warrant tolling the time to do so.

Turning to the factors for the application of equitable tolling, on balance, the

factors do not weigh in favor of tolling.  Plaintiff argues she did not know about

the EEO process and the filing deadlines, and thus tolling should apply.  Even

assuming plaintiff's ignorance of the time restraints was reasonable, she had active

notice of the time restraints at the latest by July 2016 when she communicated with

NIH EEO counselor Chinara Brown.  Brown emailed plaintiff explaining the 45-

day deadline and the complaints process, directed her on how to file a pre-

complaint, and provided information on the EEO process and her rights and

responsibilities.  However, despite plaintiff's knowledge of the process from Ms.

Brown and Ms. Brown's encouragement that plaintiff file a pre-complaint (*see*

ECF No. 70-7, PageID.1445), plaintiff exhibited no diligence at all in pursuing her

rights against DHHS.  As noted, plaintiff never filed a complaint with the EEO

counselor and did not submit a notice of intent to file suit against DHHS, and still

has not done so.[5]  Thus, the first, second, and third factors weight against tolling.

---

[5] The government reads plaintiff's response brief as asserting that the letter to Dr. Spong constituted notice of an intent to sue DHHS.  Though it is not entirely clear that plaintiff made this argument, the government is correct that the letter is not notice of an intent to sue DHHS. (ECF No. 70-8, PageID.1453-55).  Notice of intent to file a civil action under the ADEA must be in writing mailed to the EEOC within 180 days of the occurrence of the allegedly discriminatory practice.  29 C.F.R. § 1614.201.  The October 23, 2015 letter to Dr. Spong (obviously, not mailed to the EEOC) was not filed within 180 days of her demotions in 2013 or her termination

Finally, while it is not entirely clear that granting equitable tolling would prejudice the government, the Supreme Court has held that this factor alone is not a sufficient basis for equitable tolling. *Baldwin Cnty. Welcome Ctr. v. Brown,* 466 U.S. 147, 152 (1984). In light of plaintiff's failure to exhibit any diligence in pursuing her rights, the factors, on balance, weigh against applying equitable tolling to plaintiff's ADEA claims.

Other courts have similarly declined to toll the filing deadline where the plaintiff knew of the time restraints but still did not timely exhaust administrative remedies. For example, in *Steiner v. Henderson*, 354 F.3d 432 (6rh Cir. 2003), a Title VII[6] sex discrimination case, the plaintiff, a United States Postal Service employee, had notice of the exhaustion requirements. *Id.* at 436-37. In addition to her knowledge of the filing requirements, two senior managers gave her instructions on how to pursue her claims internally. Plaintiff failed to follow the mangers' instructions and the 45-day filing restraint, but instead filed a claim almost a year later. *Id.* at 437. For these reasons, and because there was no misrepresentation of the requirements by an employee to the plaintiff, equitable tolling did not apply to save the claim. *See also Kuriakose v. Veterans Affairs Ann*

---

in February 2015. In addition, no where in this letter does plaintiff mention suing DHHS/NIH or even an intent to file some kind of complaint against the agency.

[6] Title VII claims and ADEA claims both require the claimant to file a complaint with an EEO counselor within 45 days of the allegedly discriminating action. Because of the similarities in reporting requirements, Title VII cases provide persuasive examples in addressing the claims presented here under the ADEA.

*Arbor Healthcare System*, 2017 WL 4641895 (E.D. Mich. Oct. 17, 2017) (Finding plaintiff's failure to exhaust her administrative remedies "inexcusable" where she and her lawyer timely received the Notice of Right File but failed to do so). Other circuits similarly decline to toll a claim where the claimant completely failed to pursue administrative remedies, as in this case. *See Douglas v. Potter*, 268 Fed. Appx. 468 (7th Cir. 2008); *see also O'Rourke v. Continental Casualty Co.,* 983 F.2d 94, 97 (7th Cir. 1993) ("Equitable tolling enlarges the time within which to proceed but does not justify omitting steps such as the administrative charge that Congress has made essential."); *Sommatino v. United States,* 255 F.3d 704, 710 (9th Cir. 2001) ("[E]quitable tolling can extend the deadline for filing when equity so requires.... However, equitable remedies are unavailable when the record shows that no administrative filing was ever made."); *Hines v. Widnall,* 334 F.3d 1253, 1257 (11th Cir. 2003) ("[Plaintiff] does not qualify for an exception to the exhaustion requirement ... because filing a complaint with the EEOC is a prerequisite to the equitable exceptions to administrative exhaustion.").

Plaintiff did not simply fail to *timely* file a claim with the EEO counselor or give notice of an intent to sue, plaintiff did not file a claim or give notice at all. This is not one of those "compelling cases which justify a departure from established procedures." *Puckett,* 889 F.2d at 1488.

Additionally, there is no evidence that an NIH/DHHS employee misled plaintiff into missing a filing deadline.  Plaintiff asserts that when she approached the EEOC about filing a claim against CRL, two employees told plaintiff that CRL was her employer, not NIH, and that she would need to seek redress from CRL. But these representations cannot be attributed to DHHS or anyone at EDI.  Even if plaintiff was misled by the Detroit EEOC office, it is of no moment.  When plaintiff communicated with Chinara Brown, EEO counselor for DHHS, in July 2016 (well after plaintiff was in contact with the Detroit EEOC about CRL) Brown gave plaintiff correct information regarding the EEO process and provided documents and instructions on how to file a pre-complaint.  Affirmative representations by the employer that mislead a complainant into missing a filing deadline are sufficient to toll the applicable Title VII period. *See, e.g., Leake v. Univ. of Cincinnati,* 605 F.2d 255, 259 (6th Cir.1979).  Here, there was no misrepresentation from Chinara Brown about the EEO process.  Still, despite having accurate information from an EEO counselor in July 2016, plaintiff did not attempt to exhaust administrative remedies.

Finally, plaintiff's assertion, at least in her interrogatory response, that her mental health issues or incapacity prevented her from timely filing a complaint with an EEO counselor is unavailing.  In this Circuit, "mental incompetence or incapacity may provide a basis for equitable tolling." *Ata v. Scutt*, 662, F.3d 736,

741 (6th Cir. 2011) (citation omitted).  However, the Sixth Circuit has not yet ruled on the issue whether equitable tolling is applicable where a plaintiff claims that her mental health problems prevented her from filing within the ADEA period, but it has allowed such arguments in the habeas context, as in *Ata*, *supra*.

Even if mental incapacity entitled plaintiff to equitable tolling in the context of an ADEA claim, plaintiff has not sufficiently established that mental incapacitation justifies equitable tolling in this case.  *See Holt v. City of Dickson, Tennessee*, 2015 WL 6619969 (M.D. Tenn. Oct. 30, 2015).  To warrant equitable tolling for mental incapacity, at least in the habeas context, plaintiff would have to show that "(1) [s]he is mentally incompetent and (2) h[er] mental incompetence caused h[er] failure to comply with [the] statute of limitations."  *Ata,* 662 F.3d at 742.

This case is similar to *Holt v. City of Dickson, Tennessee*, 2015 WL 6619969 (M.D. Tenn. Oct. 30, 2015).  In *Holt*, the plaintiff brought suit against the city claiming racial and age discrimination in employment actions.  The plaintiff properly took her complaints to the EEOC, which ultimately gave her a notice of her right to file suit against the defendant.  The notice provided plaintiff with 90 days in which to file suit.  The plaintiff filed suit about a year later, clearly an untimely action.  She asserted that the hostile work environment was such a mental strain on her that she was mentally incapacitated and could not timely file suit.  *Id.*

at *1, 4. However, despite her claim of incapacity, the plaintiff was still able to file her claims with the EEOC, one of which she filed during a 90-day period to sue from a prior claim. *Id.* at *5. And, she did not present any evidence regarding the nature or length of her emotional distress, and no evidence that her distress was so severe as to render her incapable of conducting her normal business. Equitable tolling was not applied in *Holt*.

Here, plaintiff was able to pursue her complaints against CRL on her own without an attorney in the years following her leave of absence in December 2013 for mental health reasons. She spoke with human resources representatives at CRL about her complaints and pushed for an investigation in 2014. She continuously followed up with CRL regarding the investigation and gave them names of witnesses to support her claims. Then she went to the EEOC office in Detroit to gather information about filing a complaint, and later to file a formal complaint against CRL. In 2015, she communicated her complaints to employees at NIH and participated in a phone conference with DPI. And, by July 2016, she was in communication with an EEO counselor about her claims against DHHS and Dr. Romero. She was able to handle her affairs during this time and assert her rights against CRL, despite her mental health status. But, she did not file a claim with an EEO counselor against DHHS. Her ability to pursue her claims from 2014 through the present does not support the assertion that her mental incapacitation was so

severe as to render her incapable of exhausting her claims against DHHS through
the EEO process.

The undersigned finds no basis on which to apply equitable tolling to
plaintiff's claims against DHHS.

2.     Estoppel

Plaintiff asserts that the government is estopped from arguing the
untimeliness of her claims.  She argues that the two EEOC employees in Detroit—
Dawn and Ms. Coburn—both told her that her claims were against CRL, not NIH.
This mislead the plaintiff.  Another basis for her claim of estoppel is related to the
telephone conference plaintiff participated in with the Division of Program
Integrity (DPI) in December 2015.  Through discovery, plaintiff became aware that
DPI emailed an attorney for DHHS, Kathleen Kathman, in advance of the meeting
asking her to be available for the phone conference in the event that plaintiff
agreed to her participation.  Ms. Kathman responded that she would be available
and listed a number of questions she had about the case, including whether joint
employment had been established, whether plaintiff had filed an EEO claim, and
questions about the work environment.  (ECF No. 73-7, PageID.1534-35).  During
the call, plaintiff was not asked if Ms. Kathman could join the call, and Ms.
Kathman apparently was not on the call.  At no time did anyone tell plaintiff about
the questions Ms. Kathman had regarding the EEO process and joint employment.

Plaintiff believes that omitting this information was wrongful.  (ECF No. 73, PageID.1488).  The implication from plaintiff's argument is that, had she been told on the December call that something called a joint employer relationship existed and that there was a separate EEO process for federal claims, she would have pursued the appropriate administrative remedies.

The Sixth Circuit has held that a claim of equitable estoppel against the government requires a greater degree of misconduct than will sustain a typical estoppel-based claim:

> "Estoppel is an equitable doctrine which a court may invoke to avoid injustice in particular cases." *Fisher v. Peters*, 249 F.3d 433, 444 (6th Cir. 2001). "[T]he traditional elements of equitable estoppel are: (1) misrepresentation by the party against whom estoppel is asserted; (2) reasonable reliance on the misrepresentation by the party asserting estoppel; and (3) detriment to the party asserting estoppel." *LaBonte v. United States*, 233 F.3d 1049, 1053 (7th Cir. 2000). The government, however, "may not be estopped on the same terms as any other litigant." *Heckler v. Cmty. Health Servs. of Crawford Cty., Inc.*, 467 U.S. 51, 60, 104 S.Ct. 2218, 81 L.Ed.2d 42 (1984). Instead, "[a] party attempting to estop the government bears a very heavy burden" in sustaining its argument. *Fisher*, 249 F.3d at 444. At a minimum, the party must demonstrate some "affirmative misconduct" by the government in addition to the other estoppel elements. *Ibid.*

*Michigan Express, Inc. v. United States*, 374 F.3d 424, 427 (6th Cir. 2004).

"'[A]ffirmative misconduct' is more than mere negligence. It is an act by the government that either intentionally or recklessly misleads the claimant. The party

asserting estoppel against the government bears the burden of proving an intentional act by an agent of the government and the agent's requisite intent." *Id.*

Plaintiff's argument here fails for two reasons. First, plaintiff has not pointed to any act by the government that intentionally or recklessly mislead her as to how to pursue her claims against DHHS. What the Detroit EEOC office employees told plaintiff cannot be attributed to NIH. Neither Dawn nor Ms. Coburn were NIH employees or employees associated with the federal EEO process. And, to the extent DHHS, and specifically DPI, intentionally kept attorney Ms. Kathman off the phone conference and intentionally withheld Ms. Kathman's questions from plaintiff, there is no evidence to suggest that they did so for the purpose of misleading plaintiff into not pursuing the appropriate administrative remedies.

The second reason the argument fails is essentially the same reason the equitable tolling argument failed: plaintiff was given accurate information by an EEO counselor in July 2016, but she still did not even attempt to exhaust administrative remedies for her ADEA claims against DHHS. In other words, even if DHHS's conduct in failing to inform plaintiff of the administrative process earlier than July 2016 amounted to "affirmative misconduct," the misconduct was cured in July 2016 by EEO counselor Chinara Brown when Brown provided accurate, thorough information. Estoppel does not apply to plaintiff's claims.

3.     Waiver

It was on the issue of waiver that this Court denied in part the government's

motion to dismiss and on which it allowed a brief period of discovery.  Before the

Court here, as at the motion to dismiss stage, is plaintiff's argument that DHHS

accepted her complaint of age discrimination and hostile work environment and

investigated it on the merits, and thus the government waived the argument that her

claims are untimely.  (*See* ECF No. 58).

The Sixth Circuit has held that "when an agency accepts and investigates a

complaint of discrimination ... it does not thereby waive a defense that the

complaint was untimely." *Horton v. Potter,* 369 F.3d 906, 911 (6th Cir. 2004)

(citing *Belgrave v. Pena,* 254 F.3d 384, 387 (2d Cir. 2001)); *see also Ester v.*

*Principi,* 250 F.3d 1068, 1072 n. 1 (7th Cir. 2001); *Bowden v. United States,* 106

F.3d 433, 438 (D.C. Cir. 1997); *Rowe v. Sullivan,* 967 F.2d 186, 191 (5th Cir.

1992); *Boyd v. United States Postal Serv.,* 752 F.2d 410, 414 (9th Cir. 1985).  The

Sixth Circuit also recognizes that waiver would occur, however, "when the agency

decides the complaint on the merits without addressing the untimeliness defense."

*Id.* (citing *Ester,* 250 F.3d at 1071–72; *Bowden,* 106 F.3d at 438).

The parties disagree about the purpose of the investigation conducted by

Latif Doman (the "Doman investigation").  According to plaintiff, the Doman

investigation looked into her complaints of age discrimination, harassment, and

hostile work environment.  According to the government, the Doman investigation "was based on plaintiff's allegations of impropriety by her contractor, Charles River Laboratories, based on her communication of October 23, 2015 to Catherine Spong," (ECF No. 70, PageID.1407), and was part of a review of compliance with contract requirements for CRL (*id.* at PageID.1404).  The government says that the investigation was not in lieu of the administrative process required for plaintiff to proceed on her claims against DHSS.  (ECF No. 74, PageID.1596).  Finally, the government contends that the investigation cannot be attributed to EDI (the division within NIH that handles EEO complaints), but even if it could be, the agency did not waive the untimeliness argument simply by investigating a complaint of discrimination.

There can be no question that the government investigated the merits of plaintiff's complaints of discrimination and harassment.  NIH hired Latif Doman to conduct an investigation pursuant to 29 C.F.R. § 1614.108, the regulation that discusses Equal Employment Opportunity investigations of discrimination and harassment, including allegations under the ADEA.  According to the evidence before the Court, the inquiry ended with a report of investigation submitted by Doman to the NIH.  The pages of the ROI provided by plaintiff clearly indicate that the sole purpose of the investigation, at least as contained in this ROI, was to investigate plaintiff's claims of age discrimination, harassment, and hostile work

environment.  The synopsis of the allegations is as follows: "Ms. Powers complained that Dr. Romero harassed her and created a hostile work environment because of her age and sex.  He demoted and diminished her duties as part of the harassment.  After she complained to her employer, Ms. Powers alleged that she was fired in retaliation."  (ECF No. 73-12, PageID.1563).  The ROI says that "NIH accepted three issues for investigation: Did Dr. Romero subject Ms. Powers to a hostile work environment?  Did Dr. Romero demote Ms. Powers and diminish her duties?  Did CRL terminate Ms. Powers in retaliation for her complaints about Dr. Romero?"  (ECF No. 73-12, PageID.1564).  In an email to plaintiff, Latif Doman told her that he found a basis for her claims of harassment and hostile work environment based on statements from witnesses he found more credible than Dr. Romero.  (ECF No. 73-11, PageID.1561).  This is the extent of the information before the Court regarding this investigation and the ROI.  Clearly, NIH/DHHS investigated plaintiff's complaints of harassment and discrimination.

But the government will not be considered to have waived the untimeliness argument unless it "decide[d] the complaint on the merits without addressing the untimeliness defense."  *Horton*, *supra*.  There is no evidence at this stage that the agency—DHHS, NIH as a whole, or some division within NIH—issued a decision on the merits of plaintiff's complaints before plaintiff filed suit.  The ROI is Doman's report and conclusions drawn from the investigation given to NIH at the

end of the investigation; there is no reason to believe that the ROI is the *agency's* decision on the merits of plaintiff's allegations.  If the ROI was the agency's decision on the complaints, then there would be a question of material fact whether NIH decided the merits without addressing the untimeliness of the claims.  But, there is no question of fact here as there is no evidence that NIH ever made a decision on the complaints.

Plaintiff makes much of the fact that NIH would not provide her a copy of the ROI until discovery began in this case.  (*See* ECF No. 73, PageID.1492).  In addition to her complaint about how long it took to get the ROI, plaintiff also seems to conflate the ROI with a decision on the merits by the NIH.  The implication is that she believes NIH delayed in issuing a final decision, and thus has waived the untimeliness argument.  Whether or not NIH delayed in issuing an actual final decision, or delayed in giving plaintiff a copy of the ROI, is of no moment because no final decision was made.  Consequently, the government has not waived the untimeliness argument.  *See Knighton v. McHugh*, 2016 WL 4446593, at *2 (E.D. Mich. Aug. 24, 2016) ("Knighten [ ] argues that the court should hold that Defendants waived th[e untimeliness] defense because the EEO was delayed in issuing its final decision. The fact remains, however, that no final decision was made. This argument, therefore, fails.").

Because the government (DHHS, NIH, or EDI) did not issue a decision on the merits of plaintiff's complaints of discrimination and harassment, the government cannot be said to have waived the untimeliness argument simply because there was an investigation into the merits of her complaints.

Plaintiff did not timely exhaust administrative remedies before filing her complaint against DHHS in this Court. She also did not give DHHS notice of her intent to file a lawsuit. Although it was the government that removed her case from State court to this Court, and the government stipulated to allowing plaintiff to amend her complaint to add DHHS as a plaintiff, the government did not waive its untimeliness argument and the government's removal of the case and cooperation with plaintiff did waive the statutory prerequisites to file suit against DHHS. Accordingly, because plaintiff did not exhaust her administrative remedies, her claims under ADEA should be dismissed.

4.    Sur-Reply

In her sur-reply, plaintiff appears to raise a new argument. She contends that she timely and appropriately filed her civil lawsuit. Specifically, she says she filed her amended complaint against the government after 180 days had elapsed and there was no final decision by the agency, pursuant to 29 C.F.R. § 1614.407. (ECF No. 78, PageID.1620-21). This argument is not entirely clear. There is no evidence or assertion that she filed a complaint with an EEO counselor. There is

no evidence or assertion of some other complaint filed against the government, except for the amended complaint filed in this case in October 2017.  To the extent plaintiff's letter to Dr. Spong of October 23, 2015 is the complaint to which she refers, she did not file her lawsuit within 180 days of "filing" that "complaint." Her amended complaint naming the United States and including the ADEA claims was filed two years after her letter to Dr. Spong.  And, in any event, her letter to Dr. Spong is not a complaint that would begin the EEO process.  The letter begins by telling Dr. Spong the "first and foremost" issue is the allegation of scientific misconduct/peer review fraud by Dr. Romero.  (ECF No. 73-3, PageID.1502).  In the letter, plaintiff also explains her process of taking her complaints of age discrimination and harassment to CRL and the EEOC against CRL.  (*Id.* at PageID.1503).  It appears the point of her letter was to report what she believed was unethical and inappropriate behavior from Dr. Romero so that Dr. Spong could "look into" the matter.  (*See id.* PageID.1504).  Plaintiff did not exhibit an intent to begin the EEO process or to obtain damages or some relief from NIH. *See, e.g., Johnson v. Cohen*, 6 Fed. App. 308, 311 (6th Cir. 2001) (Explaining what constitutes "initiating contact" with an EEO counselor, including that the complainant exhibit an intent to begin the EEO process).  The undersigned cannot conclude that plaintiff properly or timely initiated an EEO complaint against the government.

## IV.   RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that defendants' motion for summary judgment (Dkt. 70) be **GRANTED**, and that the claims be dismissed.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).   Failure to file specific objections constitutes a waiver of any further right of appeal.   *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).   Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.   *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).   Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.   Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.   Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.   Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d).

The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date:  April 6, 2020                         s/Michael J. Hluchaniuk
                                            Michael J. Hluchaniuk
                                            United States Magistrate Judge

## CERTIFICATE OF SERVICE

I certify that on April 6, 2020, I electronically field the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to all counsel of record and Pro Se E-Filer Julie Powers.

s/ Durene Worth
Case Manager
(810) 341-7881
durene_worth@mied.uscourts.gov